STATE OF NORTH CAROLINA v. LEONARD GREEN MARTIN

No. 96

(Filed 24 January 1978)

1. **Criminal Law § 169— answers to questions not in record—failure to show prejudice**

Defendant failed to show prejudicial error in the trial court's rulings limiting defendant's cross-examination of two State's witnesses where the record does not show what answers the witnesses would have made had the objections to the questions not been sustained.

2. **Criminal Law § 169— answers to questions not in record—failure to show prejudice**

Where the record failed to show what the sheriff would have answered had he been permitted to testify concerning his knowledge of the reputation of a State's witness, the record failed to show prejudicial error; furthermore, since the State's witness had already testified as to his criminal record and had testified that he participated in the crime for which defendant was on trial, the testimony of the sheriff would not have added substantially to the jury's ability to evaluate the credibility of the witness.

3. **Criminal Law § 102.3— district attorney's statements—impropriety cured by trial court**

Where the district attorney asked defendant on cross-examination, "What kind of business were you in, other than robbing and killing people?" the error was cured by the trial court's sustaining of defendant's objection and instruction to the jury to disregard the district attorney's statement. Defendant also failed to show prejudice resulting from statements by the district attorney concerning defendant's sales of liquor and the absence of an alibi witness.

**4. Criminal Law § 102.1— jury argument about jail—testimony about prison camp—variation not prejudicial**

The variation between the term "jail" used by the district attorney in his argument to the jury which referred to testimony of an SBI agent and the term "prison camp" used by the agent in his testimony was trivial and did not justify any correction of the district attorney's argument by the trial judge.

**5. Criminal Law § 102.3— arrangement between witness and State—improper jury argument—correction by court**

The district attorney's jury argument concerning promises which the State made in exchange for pretrial statements from two witnesses was not prejudicial to defendant, since the court, upon defendant's objection to the argument, instructed the jury that "his testimony was that he had been made some concession to testify, and the jury can remember the evidence as it came from the mouths of the witnesses and not from the lawyers."

**6. Criminal Law § 102.9— defendant as interested witness—district attorney's jury argument proper**

The district attorney's argument to the jury concerning the testimony of defendant as an interested witness was not prejudicial to defendant, since the defendant in a criminal action is an interested witness, and the court may properly instruct the jury that the testimony of an interested witness should be scrutinized in the light of that interest, but if believed, should be given the same weight as any other evidence found believable by the jury.

**7. Criminal Law § 102.10— jury argument—defendant called a professional criminal—characterization supported by evidence**

In a prosecution for murder committed during the perpetration of an armed robbery, the private prosecutor's explanation that there were no fingerprints in the victim's home because defendant and his accomplices were professional criminals and wore gloves was not prejudicial to defendant since the evidence supported such a characterization of defendant.

APPEAL by defendant from *Collier, J.,* at the 8 November 1976 Session of ALEXANDER.

Upon separate indictments, each proper in form, the defendant was convicted of murder in the first degree and of armed robbery. He was sentenced to imprisonment for life for the murder and judgment on the charge of armed robbery was arrested, that offense being merged into the charge of murder so as to make it murder in the first degree.

On the morning of 14 December 1974, the body of Clyde Pennel was found lying on the floor of his home. It was stipulated that the proximate cause of his death was a gunshot wound in the left abdomen and that there were other gunshot wounds in the

head. The telephone had been torn from the wall and, thereby, disconnected. Mr. Pennel had a 20-gauge shotgun in his home. A window in the back of the house was raised and one of the panes had been broken out. A five-foot step ladder was immediately beneath this window. No billfold was found upon the body of Mr. Pennel. He was wearing a sweater, but no overcoat. No fingerprints were found in the house except those of the deceased and one of his relatives.

Howard Anders, an inmate of the Virginia State Prison, testified as a witness for the State to the following effect: He has not yet entered a plea in connection with the robbery and murder of Mr. Pennel, but has been promised by the State that he will "get 15 years to run concurrently" with sentences previously imposed. In December 1974, the defendant and Anders discussed picking up "a little safe or strongbox." On the evening of 13 December 1974, the defendant invited Anders to "make a trip with him" and suggested that Anders bring his rifle, which Anders did. They first drove to the house of Eudene Pruitt, who joined the venture and drove them to the Pennel home where Anders and the defendant got out, Pruitt remaining in the car and driving up and down the road waiting for them. They found a window they could raise and, using a stepladder located by Anders, the defendant went into the house. Observing a car approaching, Anders called to the defendant to get out for someone was coming. The defendant instructed him "just to watch." Anders then left and went down into a field to wait for the defendant. He heard two shots which he thought came from the house. In a short while the defendant joined Anders, they left and Pruitt picked them up in the car. The defendant was then carrying a shotgun which he did not have when he went into the house. Going back to Pruitt's home, they divided between them in equal shares $3,300 found in a billfold and threw the shotgun into the river. The defendant told Anders that no one had been hurt and that "the man would be all right."

Eudene Pruitt testified as a witness for the State to the following effect: he is now a prisoner at the Central Prison in Raleigh and is serving 7 to 10 years for breaking and entering. He has reached an agreement with the District Attorney that any additional sentence he receives as a result of the murder and robbery of Mr. Pennel will run concurrently with the sentence he is

now serving. On the occasion of the murder and robbery of Mr. Pennel, the defendant and Anders came to Pruitt's home in North Wilkesboro about dusk. He joined them in their venture. He observed that they had "a long gun and a pistol." Pruitt drove the car. He had information that Mr. Pennel carried money on him and that the three of them were "going to get it." They arrived at the Pennel home after dark. Pruitt let the defendant and Anders out of the car and drove away with the understanding that he would be back for them and pick them up. When they got out of the car the defendant and Anders each had a gun, neither of which was a shotgun. When Pruitt returned and picked them up, they did have a shotgun and said that they had to shoot Mr. Pennel, the defendant saying Anders shot first and then the defendant shot. They told Pruitt they were in the house when Mr. Pennel came home, opened the door and took a step or two inside, whereupon they shot him. They told him they had taken the billfold from Mr. Pennel and gave Pruitt $1,130 therefrom, keeping $1,100 each. Leaving the Pennel home, they stopped at the bridge over the river at North Wilkesboro, went under the bridge and threw the shotgun and billfold into the river. They then separated.

Anders and Pruitt each gave a statement to Richard Lester, an agent of the North Carolina State Bureau of Investigation, he interviewing them in prison. The statements were introduced in evidence without objection for the purpose of corroborating the testimony of Anders and Pruitt. The statements are substantially corroborative of such testimony. Pruitt's statement, which was given first, was not shown to Anders prior to Anders' own statement to Agent Lester. In Anders' statement he said that both he and the defendant were wearing gloves when they went to the Pennel house.

The defendant testified in his own behalf denying that he participated in the murder and robbery of Mr. Pennel and asserting an alibi. He called no other witness in support of the alibi. On cross-examination he acknowledged that he had been convicted nine times for violating the Federal liquor laws and once for the possession and sale of a stolen automobile.

*Rufus L. Edmisten, Attorney General, by Donald W. Grimes, Associate Attorney, for the State.*

*C. H. Kutteh II for Defendant.*

---

State v. Martin

---

LAKE, Justice.

The defendant was represented at trial by an attorney of the State of Georgia, selected and employed by the defendant, who was assisted by North Carolina counsel, also selected and employed by the defendant. On appeal he was represented by a different counsel, court-appointed.

In his case on appeal, the defendant makes five assignments of error. Assignment of Error Number Two is to the trial court's denial of his motions for a directed verdict, or a dismissal as of nonsuit, at the end of the State's evidence and again at the end of all the evidence. This assignment was not brought forward into the brief and is, therefore, deemed abandoned. Rule 28(a), Rules of Appellate Procedure, 287 N.C. 671, 741. In this, defendant's counsel was well advised for the evidence, taken in the light most favorable to the State, as it must be upon such a motion, is clearly sufficient to carry the case to the jury both upon the charge of murder and upon the charge of armed robbery.

[1] Assignment of Error Number One is that the court erred by limiting the scope of the defendant's cross-examination of the State's witnesses Allen and Anders. As to all of the exceptions upon which this assignment is based, it is sufficient to note that the record does not show what answer the witness would have made had the objection to the question not been sustained. Consequently, it cannot be determined that the ruling, even if error, was prejudicial. *State v. Felton*, 283 N.C. 368, 196 S.E. 2d 239 (1973); *State v. Kirby*, 276 N.C. 123, 133, 171 S.E. 2d 416 (1970).

The question directed to the witness Allen was whether the fact that there was no overcoat on the body of the deceased would indicate to the witness that the deceased had probably been at home for some period of time prior to the shooting. This was a matter as to which the jury was as well qualified to make an interpretation as was the witness. Consequently, there was no error in sustaining the objection.

The questions directed to the witness Anders were merely argumentative and were not designed to elicit information not already in evidence. Both with reference to the allowance of extended cross-examination for the purpose of impeachment and with reference to the curtailment thereof, this Court has frequently said, "The limits of legitimate cross-examination are

largely within the discretion of the trial judge and his ruling thereon will not be held for error in the absence of showing that the verdict was improperly influenced thereby." *State v. Chance*, 279 N.C. 643, 652, 185 S.E. 2d 227 (1971), death sentence vacated, 408 U.S. 940, 33 L.Ed. 2d 764, 92 S.Ct. 2878 (1972); *State v. McPherson*, 276 N.C. 482, 172 S.E. 2d 50 (1970); *State v. Edwards*, 228 N.C. 153, 44 S.E. 2d 725 (1947).

We find no merit in the defendant's Assignment of Error Number One.

[2] The defendant's Assignment of Error Number Three is that he called as his witness the Sheriff of Alexander County, who, after testifying that he did not know the State's witness Eudene Pruitt, personally, was asked, "Do you know his reputation?" To this question, the State's objection was sustained. Here, again, the record does not show what the witness would have answered had he been permitted to answer the question. Consequently, the record does not show prejudicial error. Furthermore, the State's witness Pruitt had already testified that he was, at that time, serving a prison sentence of 7 to 10 years for the crime of breaking and entering and had further testified that he was one of the participants in the robbery-murder for which the defendant was then on trial. Under these circumstances, it is inconceivable that the testimony of the sheriff as to the witness' reputation would have added substantially to the jury's ability to evaluate the credibility of Pruitt. We find no merit in this assignment of error.

[3] The defendant's Assignment of Error Number Four is directed to certain questions and statements by the District Attorney during the cross-examination and the redirect examination of the defendant when testifying as a witness in his own behalf. On cross-examination the defendant was asked, "Now on December 13, 1974, what kind of business were you in, other than robbing and killing people?" The question was obviously improper and the trial court promptly sustained the defendant's objection and instructed the jury, "Members of the jury, do not consider that statement of the District Attorney." This ruling of the trial judge corrected the error of the District Attorney. Thereupon, the District Attorney restated his question in a proper form, "What kind of business were you in?" The witness replied, "At that time I was in the business of trading cars and selling a little whiskey, mostly white whiskey."

State v. Martin

On redirect examination the defendant's counsel asked, "What is your occupation?" The witness replied, "Dealing in used cars." Thereupon, the District Attorney objected and moved to strike, saying, "He sells liquor too." The record does not show any ruling of the court upon the District Attorney's objection and motion, nor does it show any objection or motion or comment by the defendant's counsel with reference to this remark of the District Attorney. The witness continued his response as follows: "Business has mostly been in used cars. Oh, I've sold some whiskey, yes, sir, and I've made it too. My entire record is liquor violations except for this possession of stolen car and maybe a traffic ticket." The record further shows that in his argument to the jury the defendant's trial counsel said: "All I've got is the truth that comes from that stand. And the truth is Peewee Martin [the defendant] is a bootlegger. *** Been a race car driver and bootlegger. Run over the mountains of Virginia, and the revenuers chasing him. Made a good living bootlegging."

Finally, in connection with this assignment of error, the defendant, having asserted as his alibi that he spent the night on which the offense occurred with his girl friend in a motel in Martinsville, Virginia, was apparently asked on cross-examination to explain why his girl friend was not present to testify in corroboration of his alibi. He said, "My girl friend is not here today because I've been locked up about nine months and she started going with somebody else and is planning on getting married and her boyfriend didn't want her to come." Thereupon, the District Attorney asked, "Didn't want her to come down here and tell a fib for you, did he?" At this point the record shows an objection was interposed but does not show any ruling by the trial judge. The witness answered, "She could have told the truth." We are unable to perceive how the defendant was prejudiced by this question in view of the response to the District Attorney's question.

We find no merit in the defendant's Assignment of Error Number Four.

The defendant's Assignment of Error Number Five relates to statements made by the privately employed prosecutor and by the District Attorney in their respective arguments to the jury.

With reference to the defendant's Exceptions 13 and 14, which are directed to portions of the argument of the privately employed prosecutor, and his Exceptions 16, 17, 19, 21A, 21B, 22, 23 and 24, which are directed to portions of the argument of the District Attorney, the record discloses no objection made at the time of the argument. "An objection to argument comes too late after the verdict." *State v. Noell,* 284 N.C. 670, 698, 202 S.E. 2d 750 (1974), death sentence vacated, 428 U.S. 902, 49 L.Ed. 2d 1205, 96 S.Ct. 3203 (1976); *State v. Williams,* 276 N.C. 703, 712, 174 S.E. 2d 503 (1970), death sentence vacated, 403 U.S. 948, 29 L.Ed. 2d 860, 91 S.Ct. 2290 (1971).

[4] Defendant's Exception 15 is directed to the District Attorney's statement in his argument that S.B.I. Agent Lester and Pruitt's attorney went up to the jail to get Pruitt's statement. Defendant's counsel objected on the ground that this was not in evidence. The testimony of Agent Lester was that he went with Pruitt's court-appointed counsel "to the North Carolina Department of Corrections in Avery County," *i.e.,* to the prison camp in Avery County, to interview Pruitt and obtain his statement. The variation between the term "jail," used by the District Attorney, and the term "prison camp" is trivial and did not justify any correction of the District Attorney's argument by the trial judge.

[5] Defendant's Exception 18 relates to the District Attorney's comments in his argument concerning the statements given to Agent Lester by Anders and Pruitt. The District Attorney said, "The defendant over here can say, well look, the State has promised all this, which it has not." The context indicates the District Attorney's remark related to Agent Lester's testimony that he promised Anders nothing in order to obtain his pretrial statement. Thereupon, defendant's counsel objected, saying, "He testified on that stand he [Anders] made a deal for fifteen years and it's in the record." The court said: "His testimony was that he had been made some concession to testify, and the jury can remember the evidence as it came from the mouths of the witnesses and not from the lawyers." The court's statement in response to this objection by the defendant was sufficient to correct and remove any prejudice to the defendant which might have resulted from this remark of the District Attorney.

[6] Defendant's Exception 20 is to this statement by the District Attorney in his argument: "You got to decide that once that man

[the defendant] stands up there whether or not he is an interested witness. The judge will charge you to that, and in this State it means this; you closely scrutinize what he says to see whether or not he's telling you the truth because the law recognizes that a man in his situation is interested in your verdict. He is interested in the outcome." At this point defendant's counsel objected and the objection was overruled. In this there was no error. The defendant in a criminal action is an interested witness. The court may properly instruct the jury that the testimony of an interested witness should be scrutinized in the light of that interest, but if believed should be given the same weight as any other evidence found believable by the jury. *State v. Griffin*, 280 N.C. 142, 185 S.E. 2d 149 (1971); *State v. Green*, 187 N.C. 466, 122 S.E. 178 (1924). The charge of the court to the jury is not set forth in the record. It is presumed to have been complete and free from error.

Although the record shows no objection prior to the verdict to the other portions of the arguments for the State to which the defendant now excepts, we have, nevertheless, reviewed them because of the serious nature of the offense charged and the sentence imposed. We find in these no basis for granting the defendant a new trial.

[7] In his argument, the private prosecutor explained the absence of the defendant's fingerprints in the Pennel residence by saying: "They were professional criminals. They wore gloves. That would keep the fingerprints away." The statement of Anders to Agent Lester, introduced in evidence without objection, indicated he and the defendant wore gloves. The characterization of the three participants as professional criminals is fully supported by their own testimony. Pruitt came to the witness stand from prison where he is serving a 7 to 10 year sentence for a different breaking and entering. Anders came from the Virginia State Prison, the nature of his crime against the state not being shown in the record. The defendant testified that he met Anders while both were serving sentences in the Federal Penitentiary in Atlanta, and that he, the defendant, had been convicted numerous times for violation of liquor laws, and his own counsel, in argument, labeled him a successful bootlegger. Uncomplimentary characterizations of criminal defendants in arguments for the prosecution which are supported by the

evidence at the trial are not grounds for new trial. *State v. Frazier*, 280 N.C. 181, 201, 185 S.E. 2d 652 (1972), death sentence vacated, 409 U.S. 1004, 34 L.Ed. 2d 295, 93 S.Ct. 453 (1972); *State v. Westbrook*, 279 N.C. 18, 39, 181 S.E. 2d 572 (1971), death sentence vacated, 408 U.S. 939, 33 L.Ed. 2d 761, 92 S.Ct. 2873 (1972). *State v. Bowen*, 230 N.C. 710, 55 S.E. 2d 466 (1949).

It would serve no useful purpose to discuss in detail the other portions of the arguments for the State to which the defendant excepts but to which he interposed no objection prior to verdict. We have carefully examined them and find no departure from the limits of legitimate argument in the trial of a criminal charge of the nature here involved. The defendant's Assignment of Error Number Five is without merit.

No error.