STATE OF NORTH CAROLINA v. CARLTON CHEEK, SR.

No. 449A82

(Filed 8 February 1983)

1. **Rape and Allied Offenses § 3— indictment for first degree rape—failure to allege "with force and arms"**

    An indictment for first degree rape was not fatally defective for failure to contain the averment "with force and arms," since G.S. 15-155 specifically states that no "indictment for felony or misdemeanor . . . shall be stayed or reversed . . . for omission . . . of the words 'with force and arms' . . . ."

2. **Criminal Law §§ 76, 93— admissibility of confession—order of proof—no prejudice**

    The defendant was not prejudiced in a voir dire hearing to determine the admissibility of his confession by the error of the trial court in placing the burden of production on him since the trial judge considered all evidence, placed the burden of persuasion on the State, and made his ruling accordingly.

3. **Criminal Law § 162— no objection to questions asked on voir dire—no right to complain—no prejudice**

    Where defendant failed to object to a line of questioning asked defendant during the voir dire hearing on defendant's motion to suppress his confession, he could not complain on appeal about the interchange. Furthermore, the questions could not have prejudiced defendant because they were asked on voir dire, and it is presumed that the trial judge disregarded any incompetent evidence that was admitted.

4. **Criminal Law § 122.1— request for additional instructions—no undue emphasis on testimony**

    Where, after the jury had been fully instructed and sent to deliberate, they requested that they be allowed to hear the defendant's confession and the prosecuting witness's testimony about the rape again, and where the trial court asked both the district attorney and the defense counsel if they had any objection to his giving the highlights of the prosecuting witness's testimony and in repeating the defendant's confession and defendant did not object, defendant waived his right to have an objection to the charge considered on appeal. Nor did the trial judge impermissibly express an opinion by only summarizing the prosecuting witness's testimony while reading defendant's statement verbatim. G.S. 15A-1222.

5. **Criminal Law § 169.6— exclusion of testimony—failure to put answer in record**

    The Court could not determine whether an alleged error was prejudicial where defendant failed to include in the record what his answer would have been to a question had he been allowed to answer.

**6. Rape and Allied Offenses § 4.2— first degree rape—evidence of bruises on prosecuting witness's neck properly admitted**

> In a prosecution for first degree rape, the trial court did not err in allowing a detective to state on rebuttal that he noticed bruises on the prosecuting witness's neck several days after the alleged rape had occurred.

> Justice FRYE did not participate in the consideration or decision of this case.

BEFORE *Judge Hal H. Walker* and a jury at the 8 March 1982 Criminal Session of RANDOLPH Superior Court, defendant was convicted of first degree rape. He was sentenced to life imprisonment and appeals as a matter of right pursuant to G.S. 7A-27(a).

*Rufus L. Edmisten, Attorney General, by Reginald L. Watkins and Wilson Hayman, Assistant Attorneys General, for the State.*

*Bowden and Bowden, by R. Steve Bowden, for defendant appellant.*

EXUM, Justice.

Defendant's assignments of error relate to the trial court's failure to dismiss the charge against him on the ground that the indictment was fatally defective, the denial of his motion to suppress his pretrial confession, the court's summarization of the evidence for the jury, and the court's rulings on various evidentiary questions. We find no reversible error in the trial; therefore, we affirm the conviction.

The state's evidence at trial tended to show the following:

On 30 April 1981 Kathy Namath, the chief prosecution witness, was taking a midday nap in her home outside Liberty, North Carolina. She was suddenly awakened by an assailant who held a knife against her neck; because she was lying on her stomach, she could not see his face. He held her down on her stomach while he pulled off her pants and underwear. He then had sexual intercourse with her. When he was finished he told her to "lay there for ten minutes and not to call the police." When she heard the screen door shut she knew he had left the house so she got up, locked the door, and looked out the window. She saw a black man wearing a khaki-colored shirt running across her

lawn, but she still could not see his face. Later, she determined that a serrated knife was missing from her kitchen, as was a wallet containing approximately thirty-five dollars.

She immediately called her husband at work and then called the Liberty Police Department. An investigating detective took her clothing for analysis by the State Bureau of Investigation (SBI), and she was taken to Moses Cone Hospital for an examination.

Dr. Francis X. Barry, an expert in obstetrics and gynecology, testified that he examined Kathy Namath on 30 April. He took various smears, a culture and pubic and head hair from Ms. Namath as part of a "rape kit" which was sent to the SBI. David Spittle, a forensic serologist for the SBI, testified that the smears taken from Ms. Namath showed the presence of semen. Scott Worsham, a forensic chemist for the SBI specializing in the field of hair and fiber comparison, testified that two pubic hairs removed from Ms. Namath's bed linens were consistent with pubic hairs taken from defendant.

Defendant's supervisor testified that defendant was a state employee mowing grass along the highways in the vicinity of Ms. Namath's home the week of the rape. A neighbor saw a black male wearing a khaki shirt entering the highway from the direction of the Namath yard at 1:30 p.m. on 30 April. A state mowing machine was parked at the time in a driveway about 400 feet away, on the opposite side of the road from the Namath driveway.

A statement made by defendant to detectives of the Randolph County Sheriff's Department was introduced into evidence following a voir dire on its admissibility. After defendant executed a "Miranda Rights" form he gave a detailed statement in which he admitted using a knife to force Ms. Namath into submitting to sexual intercourse and then stealing her purse which contained approximately thirty-five dollars. He stated: "I make this statement of my own free will, after being advised of my rights. No threats or promises have been made to me by Lt. Andrews or Sgt. Pugh. I know and understand what I am doing."

Defendant testified in his own defense. Following a hearing and determination by the trial court that certain evidence was

not barred by the rape shield statute, G.S. 8-58.6, he testified that he met Ms. Namath at the Biscuit Barn in Liberty. Following two meetings there, he arranged to meet her at her home. They engaged in consensual sexual intercourse three times during April 1981 and met on other occasions. He admitted visiting her on 30 April and taking thirty dollars from her purse while she was talking on the telephone, but he denied having sexual intercourse with Ms. Namath on 30 April. He also denied that his previous statement given to the officers was truthful. He said he made it up because he believed that was what the officers wanted to hear.

During its rebuttal the state called Jeff Namath, Kathy Namath's husband. He testified that he had taken a new job in Charleston, South Carolina, in March 1981 and Ms. Namath had visited him with their two children at a time when defendant said she had been with defendant. Two investigating officers testified that they had noted bruises on Ms. Namath's neck on 30 April and afterwards. Finally, Ms. Namath absolutely denied that she had had an affair with defendant.

[1] The first issue raised by defendant is whether the indictment properly charges the offense of first degree rape. Specifically, he argues that under G.S. 15-144.1 an indictment in a rape case must contain the phrase "with force and arms." The indictment in the instant case states: "On or about the 30th day of April, 1981, in Randolph County Carlton Cheek, Sr. unlawfully and wilfully did feloniously ravish and carnally know Kathy A. Namath, by force against the victim's will." It does not include the words "with force and arms." Thus, defendant argues the indictment is fatally defective.

This argument was recently addressed and rejected by this Court in *State v. Corbett*, 307 N.C. 169, 297 S.E. 2d 553 (1982). Furthermore, G.S. 15-155 specifically addresses "[d]efects which do not vitiate" indictments: "No judgment upon any indictment for felony or misdemeanor, whether after verdict, or by confession, or otherwise, shall be stayed or reversed . . . for omission . . . of the words 'with force and arms,' . . . ." This assignment is, therefore, overruled.

[2] Defendant also assigns error to the trial court's decision that defendant's inculpatory statement to police officers was admissi-

ble against him. Defendant filed a motion to suppress the statement and a supporting affidavit before trial, and the trial judge conducted a voir dire on the motion. At the beginning of the hearing the trial judge asked the district attorney and the prosecutor if they were ready to proceed. When they responded that they were the trial judge commented, "All right. The burden is on the defendant on a motion to suppress." Defense counsel then began his direct examination of defendant.

Defendant argues the trial judge impermissibly placed the burden of proving that the statement was not voluntarily made on defendant. The state responds that when read in context the most reasonable inference from the remark is that the trial judge only placed the burden of going forward with the evidence on defendant, which the state contends is permissible. At the outset we note that technically it is not necessary for us to decide this issue because defendant failed to *object* or *properly except* to the statement by the trial judge or his findings of fact and conclusions of law on the admissibility of defendant's confession. Under Rule 10(b) of the North Carolina Rules of Appellate Procedure, "[e]ach exception shall be set out immediately following the record of judicial action to which it is addressed and shall identify the action . . . by any clear means of reference." Rule 10(a) of the North Carolina Rules of Appellate Procedure states, "No exception not so set out may be made the basis of an assignment of error . . . ." Here, the exception does not follow the remark or the findings; instead, it appears after the district attorney's opening statement to the jury. Thus, defendant's challenge to the trial court's remark and findings has not been properly presented on appeal.

Nevertheless, we are satisfied the remark of the trial judge is not indicative of prejudicial error. Defendant's pretrial motions met the procedural requirements of Article 53, Chapter 15A of the General Statutes. The motion alleged sufficient legal grounds and was supported by a factually sufficient affidavit; it was not subject to summary determination. *See* G.S. 15A-977. When such a motion is not subject to summary determination under G.S. 15A-977(b) and (c), the trial judge must conduct a hearing, make findings of fact and conclusions of law and set forth his findings and conclusions in the record. G.S. 15A-977(d), (f); *State v. Johnson*, 304 N.C. 680, 285 S.E. 2d 792 (1982). At this hearing,

held in the absence of the jury, the burden is upon the state to demonstrate the admissibility of the challenged evidence; and, in the case of a confession, the state must affirmatively show (1) the confession was voluntarily made, (2) the defendant was fully informed of his rights and (3) the defendant voluntarily waived his rights. *State v. Johnson, supra; State v. Biggs,* 289 N.C. 522, 223 S.E. 2d 371 (1976); 1 Brandis, Stansbury's N.C. Evidence § 19a (2d rev. ed. 1982). To do this the state must persuade the trial judge, sitting as the trier of fact, by a preponderance of the evidence that the facts upon which it relies to sustain admissibility and which are at issue are true. *Id.*

Ordinarily the party with the burden of persuasion is required to present evidence first, but the trial court in its discretion may depart from this general rule if the court "considers it necessary to promote justice." *State v. Temple,* 302 N.C. 1, 4, 273 S.E. 2d 273, 276 (1981). Such a departure "is not grounds for reversal unless the court abuses its discretion and defendant establishes that he was prejudiced thereby." *Id.* at 4-5, 273 S.E. 2d at 276. We held in *Temple* that requiring defendant to present his evidence first under the circumstances of that case was not prejudicial error when neither the burden of persuasion nor the burden of going forward with the evidence, *i.e.,* the burden of production, was placed on defendant. In *State v. Breeden,* 306 N.C. 533, 293 S.E. 2d 788 (1982), defendant had filed legally sufficient motions, supported by factually sufficient affidavits, to suppress certain identification testimony. Nevertheless, the trial court at the voir dire hearing ordered defendant *to go forward* with evidence, recognizing at the same time that the burden of persuasion was on the state. When defendant declared that he was not prepared to go forward, the trial court summarily denied the motion "for failure of proof." *Id.* at 539, 293 S.E. 2d at 792. *Breeden* held that this procedure was prejudicial error because the motions to suppress, "having raised legal issues and being properly supported by affidavits were not subject to summary denial" under G.S. 15A-977. *Id.* at 538, 293 S.E. 2d at 792. The Court also noted that when defendant complied "with the affidavit requirement of G.S. 15A-977" he had, in effect, already gone forward with his evidence so that it was error for the trial court to deny the motion "for the failure of proof." *Id.* at 539, 293 S.E. 2d at 792.

Here, when the trial court's statement that "the burden is on the defendant on a motion to suppress" is read in context, it is apparent that it has reference to the burden of production of evidence, not the burden of persuasion. The trial court's findings of fact and conclusions of law bolster this interpretation. They affirmatively state that defendant's confession was voluntarily given, was not the product of threats or hopes of reward, and that defendant purposely and freely waived his constitutional rights which had been read to him. Thus the trial judge did not couch his findings in language, such as "defendant has failed to show that the statement was not voluntarily given," which would have indicated that he impermissibly placed the burden of persuasion on defendant. Even so, since defendant had filed a legally sufficient motion supported by a factually sufficient affidavit under G.S. 15A-977, the trial judge erred, under *Breeden*, in placing a burden of production on defendant at the hearing. Nevertheless, defendant here did go forward with his evidence, presented his witnesses and cross-examined those presented by the state. The motion was not, as it was in *Breeden*, summarily denied for failure of proof. The trial judge considered all evidence, placed the burden of persuasion on the state, and made his ruling accordingly. We conclude, therefore, that defendant was not prejudiced by the error in placing the burden of production on him. This assignment of error is overruled.

[3] Defendant next contends the trial court erred in allowing the prosecutor, during the hearing on the motion to suppress, to cross-examine defendant about statements defendant made to a psychiatrist at Dorothea Dix Hospital. Defendant was examined at the hospital pursuant to the motion of his attorney for a determination of his capacity to stand trial. Copies of the psychiatric discharge summary were sent to defendant, his attorney, the prosecutor, and the presiding judge. During the voir dire held on defendant's motion to suppress, the following exchange took place *without objection* by defendant:

Q. [Mr. Yates] You went to Raleigh at Dix Hill, didn't you?

A. [Defendant] Yes. I've been there.

Q. What did you tell the psychiatrist down there?

A. I told him what I had told Don Andrews. You talking about Dr. Rollins? I told him I couldn't remember if I did it or not.

EXCEPTION NO. 3

Q. You told him there was nothing wrong with you. You just went down there because your attorney wanted you to?

A. No. I did not tell him that. That's a lie.

Defendant made no objection to this line of questioning; therefore, he cannot complain on appeal about the interchange. *State v. Reynolds,* 307 N.C. 184, 297 S.E. 2d 532 (1982); *State v. Foddrell,* 291 N.C. 546, 231 S.E. 2d 618 (1977). Furthermore, even if the questions asked by the district attorney were improper, a point we do not decide, they could not have prejudiced defendant because no questions were asked before the jury. Rather, they were only asked in the voir dire held before the trial judge; it is presumed that the trial judge disregarded any incompetent evidence that was admitted. *See Bizzell v. Bizzell,* 247 N.C. 590, 101 S.E. 2d 668, *cert. denied,* 358 U.S. 888 (1958).

[4] Defendant also argues the trial judge erred in placing undue emphasis on defendant's confession in repeating it and Ms. Namath's testimony about the rape. After the jury had been fully instructed and sent to deliberate, they requested, through their foreman, that they be allowed to hear these statements again. The trial judge ascertained that they just wanted the highlights of the statements; he asked both the district attorney and defense counsel if they had any objection to his giving the highlights as he recalled them. They responded that they did not.

After the trial judge completed summarizing Ms. Namath's testimony, the foreman asked to hear the written statement defendant had given to police officers. The trial judge again asked defense counsel if he had any objection and he responded, "No objection." The trial judge then read defendant's statement to the jury without any elaboration. At no time did defendant or his attorney object to this reading, a point defendant admits in his brief. Clearly the trial judge was attentive to providing defendant ample opportunity to object to the reading and summarization. "It is the general rule that objections to the charge in reviewing the

evidence and stating the contentions of the parties must be made before the jury retires so as to afford the trial judge an opportunity for correction; otherwise they are deemed to have been waived and will not be considered on appeal." *State v. Hewett*, 295 N.C. 640, 642, 247 S.E. 2d 886, 887 (1978); *see also State v. Virgil*, 276 N.C. 217, 172 S.E. 2d 28 (1970); *State v. Goines*, 273 N.C. 509, 160 S.E. 2d 469 (1968). This assignment of error is overruled.

Nor did the trial judge impermissibly express an opinion, as defendant contends, by only summarizing Ms. Namath's testimony while reading defendant's statement verbatim. General Statute 15A-1222 prohibits the trial judge from expressing "any opinion in the presence of the jury on any question of fact to be decided by the jury." We have previously held that "[s]light inaccuracies in the statement of the evidence in the instructions of the court to the jury will not be held for reversible error when not called to the attention of the judge at the time and the charge substantially complies with the requirements of G.S. 15A-1222 . . . ." *State v. Oxendine*, 300 N.C. 720, 725-26, 268 S.E. 2d 212, 216 (1980). Defendant in the instant case does not allege there were any inaccuracies in the trial judge's handling of the foreman's request for a recapitulation of the key statements. Rather, he asserts the trial judge expressed an opinion by summarizing Ms. Namath's testimony while reading verbatim defendant's statement. We are satisfied the trial judge did not convey any opinion, express or implied, to the jury by this method of recapitulating the evidence. This assignment of error is without merit.

[5] Defendant next assigns error to the trial court's sustaining an objection by the district attorney to the following question: "Mr. Cheek, this statement that you gave Don Andrews, would you tell the jury why you gave that statement?" The trial court sustained the objection, commenting, "He's answered that." Defendant contends "that his explanation of why he gave the statement to the officers in this case would have raised a question of credibility which should have been presented to the jury."

We note that defendant has again failed to comply with Rule 10(b)(1) of the North Carolina Rules of Appellate Procedure. Defendant has failed to set out an exception following the question, objection, and ruling in the record.

Defendant has also failed to include in the record what his answer would have been to this question. Even if the trial court erroneously sustained the state's objection to the question, we cannot determine whether the error was prejudicial. *State v. Martin,* 294 N.C. 253, 257, 240 S.E. 2d 415, 419 (1978); *State v. Hedrick,* 289 N.C. 232, 237, 221 S.E. 2d 350, 354 (1976). Thus, this assignment of error is overruled.

Defendant's next assignment of error is also meritless because he failed to preserve sufficient information in the record. During the direct examination of defendant by his attorney at trial, the following exchange took place:

Q. Were you telling the truth when you gave that statement?

EXCEPTION NO. 6

MR. YATES: OBJECTION, Your Honor.

THE COURT: SUSTAINED.

MR. BUNCH: We have no further questions at this time.

Defendant acknowledges in his brief "that the record does not reflect what his answer would be and thus the Court has difficulty determining the importance of the response." He argues, however, "that he should be permitted to answer whether the original statement was truthful and the failure to permit him to give this answer denied him a fair trial, since the jury could not weigh his response for truthfulness." We reiterate the rule that we cannot determine whether an error was prejudicial, even if the objection to the question was erroneously sustained, when the record fails to show what his response to the question would have been. *State v. Martin, supra,* 294 N.C. at 257, 240 S.E. 2d at 419; *State v. Hedrick, supra,* 289 N.C. at 237, 221 S.E. 2d at 354. Furthermore, defendant was later allowed on cross-examination to testify that he "lied" when he made the confession to Detective Andrews. He was given the opportunity to deny before the jury the truthfulness of his confession; thus he could not have been prejudiced by the trial court's sustaining the district attorney's objection to this particular question.

[6] Finally, defendant contends the trial court erred in allowing a law enforcement officer to testify about bruises he observed on

Ms. Namath's neck four days after the rape was committed. Ms. Namath had testified that the man who raped her had held a knife to her neck and that she had "a small bruise and a cut" on her neck the day after the rape. In presenting evidence on rebuttal, after defendant had testified that he had engaged in consensual acts of intercourse with Ms. Namath, the district attorney asked Detective Andrews if he noticed any bruises on Ms. Namath on 4 May. He replied, over defendant's objection, that she had bruises on the right side of her neck.

We are satisfied that the evidence is relevant to the question whether a forcible rape occurred and is admissible.

Evidence is relevant if it has any logical tendency to prove a fact at issue in a case, . . . and in a criminal case every circumstance calculated to throw any light upon the supposed crime is admissible and permissible. . . . It is not required that evidence bear directly on the question in issue, and evidence is competent and relevant if it is one of the circumstances surrounding the parties, and necessary to be known, to properly understand their conduct or motives, or if it reasonably allows the jury to draw an inference as to a disputed fact. [Citations omitted.]

*State v. Arnold,* 284 N.C. 41, 47-8, 199 S.E. 2d 423, 427 (1973).

Furthermore, another detective with the Randolph County Sheriff's Department, Waymon Pugh, testified on rebuttal that he noted red marks on Ms. Namath's neck on the day of the rape, although they were not bruises at that time. This testimony was admitted without objection. Thus, any possible error in admitting Detective Andrews' testimony could not have prejudiced defendant. We conclude this assignment of error is without merit.

All other assignments of error have been expressly abandoned by defendant in his brief.

For the reasons stated we conclude that defendant has had a fair trial free from reversible error.

No error.

Justice FRYE did not participate in the consideration or decision of this case.