STATE OF NORTH CAROLINA v. PHILLIP ANTOINE WOMACK

No. COA10 1184

(Filed 19 April 2011)

1. **Constitutional Law— effective assistance of counsel— counsel's admission to prior convictions—no reasonable likelihood of different outcome**

    Defendant did not receive ineffective assistance of counsel at a hearing to determine if he had attained habitual felon status. Defense counsel's admission that defendant had three prior felony convictions did not violate *State v. Harbison*, 315 N.C. 175, and the *Harbison* rule does not apply to sentencing proceedings. Furthermore, even assuming *arguendo* that defense counsel's representation was deficient, there was no reasonable likelihood that the outcome at defendant's habitual felon proceeding would have been different had his trial counsel not made the challenged comment.

2. **Constitutional Law— effective assistance of counsel— counsel's statement—no reasonable likelihood of different outcome**

    Defendant did not receive ineffective assistance of counsel at a sentencing hearing for his conviction of possession of drugs. Defense counsel's challenged statement was nothing more than a slip of the tongue and the isolated statement, taken in context, did not constitute deficient performance.

STATE v. WOMACK

[211 N.C. App. 309 (2011)]

Appeal by defendant from judgment entered 2 March 2010 by Judge L. Todd Burke in Guilford County Superior Court. Heard in the Court of Appeals 8 March 2011.

*Attorney General Roy Cooper, Special Deputy Attorney General Lars F. Nance, for the State.*

*Leslie C. Rawls, for defendant-appellant.*

ERVIN, Judge.

Defendant Phillip Antoine Womack appeals from a judgment sentencing him to a minimum term of 107 months and a maximum term of 138 months imprisonment in the custody of the North Carolina Department of Correction based on jury verdicts convicting him of possession of methylenedioxymethamphetamine and having attained the status of an habitual felon. On appeal, Defendant contends that he received ineffective assistance of counsel at the proceeding held for the purpose of determining whether he had attained habitual felon status and during the sentencing hearing based on comments made by his trial counsel. After careful consideration of Defendant's challenges to the trial court's judgment in light of the record and the applicable law, we conclude that no error occurred during the proceedings leading to the entry of the trial court's judgment.

I. Factual Background

A. Substantive Facts

1. State's Evidence

Officer Adam Deal has been an officer with the Greensboro Police Department since 2004. Officer Deal initially encountered Defendant while on routine patrol during the pre-dawn hours on 11 May 2008, at which time he was responding to an anonymous report that shots had been fired at an apartment complex. Upon arriving at the complex, Officer Deal observed Defendant, who was irate and yelling, outside of Apartment K. After identifying himself, Officer Deal performed a pat down of Defendant and obtained Defendant's identification card. Officer Deal did not find any weapons on Defendant.

Defendant told Officer Deal that he had heard shots fired near the parking lot and was afraid that someone was shooting at him. In addition, Defendant warned Officer Deal to "watch out" for the person who drove a gray or silver Pontiac that was parked next to Apartment

K. At the conclusion of this conversation, Officer Deal had no reason to suspect Defendant and told him that he was free to leave.

After ending his conversation with Defendant, Officer Deal began to search the area for evidence. While examining the parking lot, Officer Deal located the gray Pontiac that Defendant had mentioned and noticed that the vehicle had apparently sustained gunshot damage. In addition, Officer Deal located a number of empty shotgun shells about fifteen feet from the Pontiac in the direction of Apartment K.

At that point, Officer Deal spoke with the occupants of Apartment K, who identified Defendant as the person who had fired the shots that precipitated the call that led to Officer Deal's presence in the vicinity and damaged the gray Pontiac. Based on this information and the discoveries that he had made while examining the surrounding area, Officer Deal began searching for Defendant.

As he was attempting to locate Defendant, Office Deal saw Defendant coming out of an apartment. Officer Deal stopped Defendant for a second time, handcuffed him, and frisked him again because Defendant had been out of his sight and had had the opportunity to acquire a weapon during the interval between the first and second pat down searches. In the course of this second frisk, Officer Deal felt a "ball of sponge-like material [that was] approximately the size of a golf ball." Based on his expertise and experience, Officer Deal believed the item in Defendant's possession to be contraband, such as a bag of marijuana.

Officer Deal removed the item from Defendant's pocket and discovered that it was a wad of tissue paper that contained several hard items. At that point, Officer Deal suspected that the tissue contained crack cocaine, opened it, and found three small yellow pills which he believed to be ecstasy. A field test performed on the pills confirmed Officer Deal's impression. Special Agent Carroll Bazemore, a forensic drug chemist employed by the State Bureau of Investigation, tested the pills seized from Defendant and determined that they contained .4 grams of methylenedioxymethamphetamine, a substance commonly referred to as ecstasy.

## 2. Defendant's Evidence

Although Defendant's testimony at trial was generally consistent with that of Officer Deal, Defendant stated that Officer Deal removed several items from his pocket at the time of the initial pat down, including his identification card. In addition, Defendant claimed that Officer Deal grabbed and handcuffed him during their second

encounter. Subsequently, Officer Deal had Defendant turn and face him, at which point Officer Deal showed Defendant the tissue and pills that he claimed to have seized from Defendant's back pocket. At that point, Defendant testified that Officer Deal told him he was under arrest and placed him in a patrol car.

### B. Procedural History

On 7 July 2008, the Guilford County grand jury returned bills of indictment charging Defendant with possession of methylene-dioxymethamphetamine and having attained the status of an habitual felon. The cases against Defendant came on for trial before a jury at the 2 March 2010 session of the Guilford County Superior Court. On the same date, the jury returned verdicts convicting Defendant of possession of methylenedioxymethamphetamine and having attained the status of an habitual felon. At the ensuing sentencing hearing, the trial court found that Defendant had accumulated nine prior record points and should be sentenced as a Level IV offender. Based upon these determinations, the trial court sentenced Defendant to a minimum term of 107 months and a maximum term of 138 months imprisonment in the custody of the North Carolina Department of Correction. On 24 August 2010, this Court granted Defendant's petition seeking the issuance of a writ of *certiorari* for the purpose of reviewing Defendant's challenges to the trial court's judgment.

### II. Legal Analysis

### A. Standard of Review

In both of the two arguments that he advances on appeal, Defendant claims that he received constitutionally deficient representation from his trial counsel in violation of the Sixth Amendment to the United States Constitution and Article I, Section 23 of the North Carolina Constitution. In analyzing ineffective assistance of counsel claims, we utilize a two-part test, under which the "[d]efendant must show (1) that 'counsel's performance was deficient,' meaning it 'fell below an objective standard of reasonableness,' and (2) that 'the deficient performance prejudiced the defense,' meaning that 'counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' " *State v. Mohamed*, — N.C. App. —, —, 696 S.E.2d 724, 733 (2010) (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984)). Our law recognizes a "strong presumption that counsel's conduct falls within the wide range of reasonable profes-

sional assistance[.]" *Strickland*, 466 U.S. at 689, 80 L. E. 2d at 694, 104 S. Ct. at 2065. A defendant may rebut the presumption that his or her counsel provided adequate representation by showing the acts or omissions upon which his or her claim is predicated did not "result [from the exercise of] reasonable professional judgment," so that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690, 80 L. E. 2d at 695, 104 S. Ct. at 2066. In proving whether counsel's actions resulted in prejudice to the defendant, he or she must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[,]" with a "reasonable probability" being "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 80 L. E. 2d at 698, 104 S. Ct. at 2068. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697, 80 L. Ed 2d at 699, 104 S. Ct. at 2069.

As a general proposition, ineffective assistance of counsel "claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." *State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001), *cert. denied*, 535 U.S. 1114, 153 L. Ed. 2d 162, 122 S. Ct. 2332 (2002). However, " 'should the reviewing court determine that [ineffective assistance of counsel] claims have been prematurely asserted on direct appeal, it shall dismiss those claims without prejudice to the defendant's right to reassert them during a subsequent [motion for appropriate relief] proceeding." *Mohamed*, —— N.C. App. at ——, 696 S.E.2d at 733 (quoting *Fair*, 354 N.C. at 167, 557 S.E.2d at 525).

## B. Admission of Convictions

**[1]** First, Defendant contends that he received ineffective assistance because his trial counsel conceded Defendant's guilt of three prior felonies during the habitual felon proceeding. Although we agree that this component of Defendant's ineffective assistance claim can be appropriately resolved on direct appeal, we do not believe that Defendant is entitled to appellate relief on the basis of this claim.

The habitual felon indictment returned against Defendant in this case alleged that:

. . . [O]n or about the date of offense [11 May 2008] and in the county named above [Guilford] the defendant named above [Phillip Antoine Womack] unlawfully, willfully, and feloniously did commit one or more felonious offenses while being an habitual felon. This offense was committed after defendant was convicted of at least three (3) successive felony offenses subsequent to July 6, 1967, the effective date of this statute, to wit:

1. That on or about October 19, 1998, in the Superior Court of Guilford County, North Carolina, the defendant pled guilty to and/or was convicted of the felony offense of Robbery with a Dangerous Weapon against the State of North Carolina, with the commission date of July 8, 1998 (98 CRS 23596);

2. That thereafter on or about February 2, 2005, in the Superior Court of Guilford County, North Carolina, defendant pled guilty to and/or was convicted of the felony offense of Larceny of [a] Motor Vehicle against the State of North Carolina, with the commission date of April 15, 2004 (04 CRS 76900);

3. That thereafter on or about August 31, 2006 in the Superior Court of Guilford County, North Carolina, defendant pled guilty to and/or was convicted of the felony offense of Possession of [a] Stolen Motor Vehicle against the State of North Carolina, with the commission date of August 2, 2005 (05 CRS 86842).

At least two (2) of the aforementioned felony convictions against the peace and dignity of the State were committed after the defendant had attained the age of 18 years.

On direct examination at the guilt-innocence phase of the trial, Defendant testified that:

Q. Now, you've been convicted of prior offenses?

A. Yes.

Q. What offenses have you been convicted of?

A. Like, everything?

Q. Well, in terms of what you've been convicted of.

A. I got a few marijuana charges, um, possession of a stolen motor vehicle, larceny of a motor vehicle, um, probation violation.

Q. But that was as a result of these other convictions?

A. Yes. That was, like, catching those charges while I was on probation.

On cross-examination, Defendant testified that:

Q. Do you recall being convicted of Flee to Elude in August of '06?

A. They charged—that charge was dismissed. I wasn't convicted of it. I—it had something to do with the plea bargain. The plea bargain was possession of a stolen motor vehicle and they would drop fleeing to elude, speeding, and I think I ran a stop sign.

Q. Are you Phillip Womack?

A. Yes.

Q. Date of birth September 19, 1982?

A. Yes.

Q. Do you recall being convicted of 05 CRS 86843 on August 31st of 2006 of felony flee to elude arrest?

A. If it was part of a plea bargain—with a plea bargain, they just said they're going to drop certain charges if you take a plea, and they'll let you go.

Q. But that was the same date you were convicted of possession of a stolen motor vehicle—

A. Yes.

While the jury was deliberating the issue of Defendant's guilt, the following colloquy occurred between the trial court and Defendant's trial counsel:

THE COURT: [Defense Counsel], I have a question. Now, your client still wants to have a trial on whether he's an habitual felon or not?

[DEF. COUN.]: Well, I talked to him about that. We'll stipulate to the habitual felon charge—

THE COURT: He'd have to plead guilty to it or either you have a trial. There's no in-between. Either plead guilty to it, "yes," and you fill out a transcript of plea to that effect, or either we have a trial on it.

STATE v. WOMACK

[211 N.C. App. 309 (2011)]

[DEF. COUN.]: And, Judge, the main concern I have is what-
ever this bill that they have in the legislature, whether it would
have an effect on him if he pled guilty as opposed to—having a
trial. I mean—

THE COURT: What is the bill?

[DEF. COUN.]: Oh, there's one that says that the H and I's may
be removed as—as underlying crimes for the habitual—

THE COURT: That's only to be applied retroactively [sic].

[DEF. COUN.]: That is correct. There's a lot of "ifs" involved.

THE COURT: And if they applied it retroactively, it would
apply to him whether he admits to it or not.

(Counsel and defendant confer off the record)

[DEF. COUN.]: I guess we'll have a trial, Judge.

At the habitual felon sentencing hearing, the State introduced certified
copies of documents establishing Defendant's convictions for larceny
of a motor vehicle, robbery with a dangerous weapon, and posses-
sion of a stolen motor vehicle and argued the State's case to the jury.
At the habitual felon hearing, Defendant's trial counsel argued that:

Basically, just to give—flesh out some of these charges, all
of them my client pled guilty to. The armed robbery or the
robbery with a dangerous weapon, my client was 15 years of age.
Note his date of birth and check that out. So this is a totally
youthful indiscretion.

As far as the stolen vehicle, my client indicated although he
pled guilty, this was a situation where he was in the State of South
Carolina; that he was not aware of the vehicle being stolen.
Apparently, it was involved in an accident down there and was
impounded, and then as it turned out, he entered into a guilty
plea. Generally, these are the result of whatever plea agreements
are worked out with the prosecutor, and so I want you to con-
sider that in making your determinations.

In his brief, Defendant argues that his trial counsel's concluding argu-
ment at the habitual felon proceeding contravened the principle
enunciated in *State v. Harbison*, 315 N.C. 175, 337 S.E.2d 504 (1985),
*cert. denied*, 476 U.S. 1123, 90 L. Ed. 2d 672, 106 S. Ct. 1992 (1986), in
which the Supreme Court held that "a counsel's admission of his

client's guilt, without the client's knowing consent and despite the client's plea of not guilty, constitutes ineffective assistance[.]" *Id.* at 179, 337 S.E.2d at 506-07. We do not find Defendant's argument persuasive.

The first problem with Defendant's challenge to his trial counsel's comments is that no *Harbison* violation occurred. In order to reach this conclusion, we must examine the determinations that must be made in order for a convicted criminal defendant to be sentenced as an habitual felon.

An habitual felon is "[a]ny person who has been convicted of or pled guilty to three felony offenses in any federal court or state court in the United States or combination thereof[.]" N.C. Gen. Stat. § 14-7.1.

> For the purpose of this Article, a felony offense is defined as an offense which is a felony under the laws of the State or other sovereign wherein a plea of guilty was entered or a conviction was returned regardless of the sentence actually imposed . . . . For the purposes of this Article, felonies committed before a person attains the age of 18 years shall not constitute more than one felony. The commission of a second felony shall not fall within the purview of this Article unless it is committed after the conviction of or plea of guilty to the felony. The commission of a third felony shall not fall within the purview of this Article unless it is committed after the conviction of or plea of guilty to the second felony.

*Id.* As a result, the mere fact that a defendant has been convicted of three felony offenses does not, without more, suffice to support a finding that he or she is an habitual felon for purposes of N.C. Gen. Stat. § 14-7.1.

"Being an habitual felon is not a crime but is a status the attaining of which subjects a person thereafter convicted of a crime to an increased punishment for that crime." *State v. Allen,* 292 N.C. 431, 435, 233 S.E.2d 585, 588 (1977). For that reason, the mere fact that a person has attained habitual felon status, "standing alone, will not support a criminal sentence." *Id.* Instead, "[w]hen an habitual felon . . . commits any felony under the laws of the State of North Carolina, the felon must, upon conviction or plea of guilty . . . be sentenced as a Class C felon." N.C. Gen. Stat. § 14-7.6. The only effect of establishing that a defendant has attained habitual felon status "is to enhance the punishment which would otherwise be appropriate for the substantive felony which he has allegedly committed while in such a status." *Allen,* 292 N.C. at 435, 233 S.E.2d at 588.

Although Defendant's trial counsel admitted that his client had pled guilty to three felonies and discussed circumstances that served to mitigate the significance of Defendant's robbery and possession of a stolen vehicle convictions, he never argued that the jury should find that Defendant had attained habitual felon status. In fact, the jury could not have properly returned a verdict finding that Defendant had attained habitual felon status on the basis of the information contained in the challenged argument, since Defendant's trial counsel did not concede that Defendant met either the age or chronology criteria set out in N.C. Gen. Stat. § 14-7.1. The Supreme Court has clearly held that no *Harbison* violation occurred when "counsel stated there was malice, [but] did not admit guilt[.]" *State v. Fisher*, 318 N.C. 512, 533, 350 S.E.2d 334, 346 (1986). Similarly, in this case, Defendant's trial counsel admitted that Defendant had three prior felony convictions, but he never admitted that Defendant had attained habitual felon status and, in fact, suggested that the jury take certain mitigating factors into consideration in its deliberations. Thus, we conclude that the argument made by Defendant's trial counsel did not run afoul of the principle enunciated in *Harbison*.

Moreover, the Supreme Court has explicitly held that "[t]he *Harbison* rule [] does not apply to sentencing proceedings." *State v. Fletcher*, 354 N.C. 455, 481-82, 555 S.E.2d 534, 550 (2001) (citing *State v. Boyd*, 343 N.C. 699, 723, 473 S.E.2d 327, 340 (1996), *cert. denied*, 519 U.S. 1096, 136 L. Ed. 2d 722, 117 S. Ct. 778 (1997)) and *State v. Walls*, 342 N.C. 1, 57, 463 S.E.2d 738, 768 (1995) (stating that "*Harbison* applies only to the guilt/innocence phase of a trial"), *cert. denied*, 517 U.S. 1197, 134 L. Ed. 2d 794, 116 S. Ct. 1694 (1996))), *cert. denied*, 537 U.S. 846, 154 L. Ed. 2d 73, 123 S. Ct. 184 (2002). As a result of the fact that the alleged *Harbison* error occurred at a proceeding convened for the purpose of determining whether Defendant's sentence should be enhanced because of his prior criminal

Defendant's claim for this reason as well. Thus, Defendant's challenge to his trial counsel's argument is most appropriately examined using the approach outlined in *Strickland* rather than the approach outlined in *Harbison*. *Fletcher*, 354 N.C. at 482, 555 S.E.2d at 550.

A careful examination of the record indicates that the State's evidence to the effect that Defendant had attained habitual felon status was overwhelming. At the habitual felon proceeding, the State introduced certified documentary evidence that Defendant had committed the offenses alleged in the habitual felon indictment. Assuming

that Defendant had committed and been convicted of those offenses on the dates in question, he had clearly attained habitual felon status. Defendant has not contended that he had any basis for contesting the State's contention that he committed and was convicted of each of those prior felonies on the dates specified in the habitual felon indictment. On the contrary, Defendant admitted having been convicted of possession of a stolen motor vehicle and larceny of a motor vehicle during his testimony at the guilt-innocence phase of the trial. At one point, Defendant appeared ready to stipulate that he had attained habitual felon status, but he ultimately elected not to do so. Assuming, without in any way deciding, that Defendant's trial counsel provided him with deficient representation by making the challenged comments, we readily conclude that there is no reasonable likelihood that the outcome at Defendant's habitual felon proceeding would have been different had his trial counsel not made the challenged comments, leading inexorably to the conclusion that Defendant's ineffective assistance of counsel argument based upon those comments has no merit.

### C. "Take Umbrage with my Client"

**[2]** Secondly, Defendant claims he also received deficient representation at his sentencing hearing based on a comment made by his trial counsel "ask[ing] the Court to take umbrage with my client in terms of sentencing him in the mitigating range, which I believe would be an 80-month minimum sentence." Although we agree that no additional factual development needs to occur prior to consideration of this claim so that it is cognizable on direct appeal, we do not find Defendant's argument persuasive.

As Defendant correctly points out in his brief, the dictionary defines umbrage as "a reason for doubt . . . a feeling of resentment[.]" *Webster's Ninth New Collegiate* Dictionary 1280 (1991). Based upon this fact, Defendant argues that his trial counsel actually urged the trial court to impose a harsh sentence on him. However, we believe that this comment, taken in context, cannot be construed as a request that the trial court sentence Defendant harshly.

At the sentencing hearing, Defendant's trial counsel argued that:

> I have to concur with the assistant DA that this is a Level 4 for sentencing purposes. You've heard the evidence that's been submitted at trial, Your Honor. This was—although certainly within the meaning of the statute, this was a low-level conviction in terms of the quantity and those types of elements. I

would ask the Court to take umbrage with my client in terms of sentencing him in the mitigating range, which I believe would be an 80-month minimum sentence.

I realize he had the outburst before and he did apologize to Your Honor, and certainly, Mr. Womack is entitled to his adjudicated day in court, his due process. Certainly, he couldn't have asked for a fairer trial. So I would just ask the Court to consider that, given the circumstances of this particular offense.

A careful analysis of the statements made by Defendant's counsel indicates that these comments included an assertion that Defendant's offense was "low-level" in nature and requests that Defendant be sentenced in the mitigated range and be treated leniently. When taken in context, it is clear that Defendant's trial counsel used the word "umbrage" in the sense of "mercy" rather than in accordance with its literal meaning. As a result, we conclude that the reference by Defendant's trial counsel to "taking umbrage" with Defendant represents nothing more than a slip of the tongue and that, while Defendant's trial counsel could have chosen his words more carefully, we are unable to conclude that this isolated statement, taken in context, constitutes deficient performance, entitling Defendant to a new sentencing hearing.

## III. Conclusion

For the reasons set forth above, we conclude that Defendant has failed to show that he is entitled to relief on appeal as the result of deficient performance by his trial counsel. Thus, the trial court's judgment should remain undisturbed.

NO ERROR.

Judges ROBERT C. HUNTER and STEPHENS concur.