STATE OF NORTH CAROLINA v. CHARLIE THOMAS RIVERS

No. 562A88

(Filed 27 June 1989)

**Criminal Law § 173— murder—threats by defendant—invited error**

 The trial court did not err in a prosecution for first degree murder by failing to strike *ex mero motu* an answer given by a witness during cross-examination by defendant tending to show that defendant threatened to kill the victim prior to the actual killing where counsel for the defendant was attempting to show that the defendant had begged the victim not to sell any more drugs to the defendant's son. It is clear that the testimony of which defendant now complains was elicited by defense counsel during cross-examination and that he did not object to the testimony in any way or move to have it stricken at trial; any error was invited and defendant cannot complain of such error on appeal. N.C.G.S. § 15A-1443(c) (1988).

 **Am Jur 2d, Homicide §§ 316, 440, 536; Witnesses §§ 471, 492.**

APPEAL of right pursuant to N.C.G.S. § 7A-27 from judgment entered by *Stephens, J.*, in the Superior Court, ALAMANCE County, on 7 July 1988, sentencing the defendant to life imprisonment for murder in the first degree. Heard in the Supreme Court on 10 May 1989.

*Lacy H. Thornburg, Attorney General, by Dennis P. Myers, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by M. Patricia Devine, Assistant Appellate Defender, for the defendant-appellant.*

MITCHELL, Justice.

The defendant was tried in a noncapital trial upon a proper indictment charging him with murder. The jury found the defendant guilty of first degree murder, and the trial court entered judgment sentencing him to imprisonment for life.

On appeal, the defendant contends that the trial court committed plain error requiring a new trial by failing to strike *ex mero motu* an answer given by a witness, during cross-examination by the defendant, tending to show that the defendant had made a threat to kill the victim sometime prior to the actual killing in this case. We do not agree.

The State's evidence tended to show that the victim Lee Mabe was shooting pool in a business called "Pedro's" in Alamance County shortly before midnight on 23 December 1987. Lisa Mulé who had lived with the victim for approximately one year was present. Mike Rivers, the defendant's adult son, was also present, as were others.

Sometime after 11:30 p.m., the defendant walked up to Lee Mabe and pointed a pistol at his head. Mabe retreated while asking the defendant to "calm down" and saying, "Bo, what are you doing?" The defendant then held the pistol close to Mabe's chest and shot him once in the heart causing his death.

Evidence for the defendant tended to show that in April of 1987 he had become aware that his son had a cocaine problem, when his son was hospitalized for hepatitis. The defendant had sought to have his son treated for drug addiction. On one occasion, the defendant caused his son to be picked up by law enforcement officers and placed in a treatment program.

On the night of 23 December 1987, the defendant went into Pedro's because he saw his son's car parked outside. After entering Pedro's at approximately 9:15 p.m., the defendant had approximately three beers. During the evening, the defendant saw his son and the victim Lee Mabe go into the bathroom. When they returned, the defendant saw Lee Mabe hand the defendant's son a packet containing a white substance. The defendant believed it to be cocaine. The defendant testified that at that time, "I knowed he had done sold him them drugs and that he was going to go off and do them, you know, and I just went all to pieces, lost my mind, you see. . . ." The defendant testified that he did not remember whether he had ever intended to reach for a weapon, nor did he recall saying anything to anyone. The defendant testified that he did not form a plan to kill anyone and expressed regret for what had happened.

The defendant assigns as error the trial court's failure to exclude *ex mero motu* testimony of a witness introduced during cross-examination by the defendant, which the defendant contends was impermissible hearsay. The testimony in question occurred during the defendant's cross-examination of Lisa Mulé concerning a telephone conversation between the defendant and

the victim before the night the victim was killed. During cross-examination for the defendant, the following exchange occurred:

Q. A short time later there was a telephone call and it was Charlie Rivers, wasn't it?

A. Correct.

Q. He talked to Lee Mabe, not to you, isn't that correct?

A. Correct.

Q. You know that he begged him not to provide cocaine to Mike, didn't you?

A. Yes. In fact, he said he would kill him if he knew Mike was over there doing drugs, that he would kill Lee.

Q. Is that what he said to you?

A. *No, that's what Lee told me that he said to him,* but Lee didn't worry about it because he wasn't selling drugs to him.

Q. So you don't know what—in the conversation what all was said, do you?

A. No, not for sure, I wasn't on the phone.

(emphasis added).

The defendant, relying upon cases such as *State v. Loftin,* 322 N.C. 375, 368 S.E. 2d 613 (1988) and *State v. Odom,* 316 N.C. 306, 341 S.E. 2d 332 (1986), contends that the admission of this testimony constituted plain error entitling him to a new trial. We find it unnecessary, however, to engage in plain error analysis on the facts of the present case.

It appears that, during cross-examination of the witness, counsel for the defendant was attempting to show that the defendant had begged the victim not to sell any more drugs to the defendant's son. It further appears that this was part of an understandable trial strategy to arouse sympathy for the defendant with the jury by showing through various witnesses the extreme efforts the defendant had made to prevent the victim and others from selling drugs to his son. It is clear, in any event, that the testimony of which the defendant now complains was elicited by counsel for the defendant during his cross-examination of the

witness and that he did not object to the testimony in any way or move to have it stricken at trial. "Any error thus was invited and defendant cannot complain of such error on appeal. N.C.G.S. § 15A-1443(c) (1988)." *State v. Greene*, 324 N.C. 1, 12, 376 S.E. 2d 430, 438 (1988). " 'Defendant cannot invalidate a trial by . . . eliciting evidence on cross-examination which he might have rightfully excluded if the same evidence had been offered by the State. . . . Neither is invited error ground for a new trial.' " *State v. Chatman*, 308 N.C. 169, 177, 301 S.E. 2d 71, 76 (1983) (quoting *State v. Waddell*, 289 N.C. 19, 25, 220 S.E. 2d 293, 298 (1975), *death sentence vacated*, 428 U.S. 904, 49 L.Ed. 2d 1210 (1976) (citations omitted) ). *See also State v. Burton*, 256 N.C. 464, 124 S.E. 2d 108 (1962) (*per curiam*). The defendant's assignment of error is without merit and is overruled.

No error.