**STATE v. DEW**

[225 N.C. App. 750 (2013)]

STATE OF NORTH CAROLINA
v.
JOHN EARL DEW, JR.

No. COA12-642

Filed 5 March 2013

**1. Evidence—victims' credibility—statement by victims' mother—reaction when told of abuse**

There was no plain error in a prosecution for indecent liberties where the victims' mother repeated in court a statement that she believed her daughters. Taken in context, the statement was made in the course of a discussion of her emotional state when the victims told her that defendant had sexually abused them. Assuming that the admission of this portion of her testimony was improper, defendant did not show that the jury would have probably reached a different result absent the error.

**2. Evidence—victims' credibility—victims' appearance and behavior—meeting with detective**

There was no plain error in a prosecution for indecent liberties where a detective allegedly vouched for a victim's credibility in his testimony. In context, the detective was simply describing the victim's appearance and behavior as she observed it during their meeting.

**3. Evidence—victims' credibility—detective's statement—invited error**

There was no error in a prosecution for indecent liberties where a detective allegedly testified on cross-examination that the victims were "extremely credible." Defendant was not entitled to seek appellate relief on the grounds that the challenged testimony should have been excluded after directly posing a question that incorporated inadmissible material.

**4. Evidence—exclusion of evidence—offer of proof required on appeal**

No error was found in the exclusion of evidence by the trial court in an indecent liberties case where there was no offer of proof.

**5. Witnesses—expert—family therapist—indecent liberties prosecution**

The trial court did not err in an indecent liberties prosecution by allowing a family therapist to testify as an expert where she clearly had the necessary qualifications and defendant did not demonstrate that her methods were unreliable.

**6. Evidence—victims' credibility—therapist's opinion**

The trial court did not err in an indecent liberties prosecution by allowing testimony from a family therapist in which, according to defendant, the therapist vouched for the victims' credibility. In context, the therapist never directly stated that the victims were believable, but described the actions and reactions of sexual abuse victims in general.

**7. Constitutional Law—effective representation of counsel— admission of evidence**

An indecent liberties defendant was not entitled to relief on ineffective assistance of counsel grounds where he did not show deficient representation or prejudice from the admission of certain evidence. Defendant's ineffective representation claim regarding a detective's testimony on cross-examination was dismissed without prejudice to a future motion for appropriate relief because the record did not permit a proper evaluation of the evidence.

Appeal by defendant from judgments entered 13 December 2011 by Judge Eric Levinson in Cleveland County Superior Court. Heard in the Court of Appeals 7 January 2013.

*Attorney General Roy Cooper, by Assistant Attorney General Teresa M. Postell, for the State.*

*Mark Montgomery for Defendant-Appellant.*

ERVIN, Judge.

Defendant John Earl Dew, Jr., appeals from judgments entered based upon his convictions of six counts of taking indecent liberties with a child stemming from conduct he allegedly engaged in with two sisters, V.M. and B.M.[1] On appeal, Defendant argues that the trial court committed plain error by allowing Angela M. to testify that she believed Becky and Violet, who are her daughters; committed plain

---

1. V.M. and B.M will be referred to as "Violet" and "Becky," respectively, throughout the remainder of this opinion for ease of reading and to protect the children's privacy.

error by allowing Detective Tracy Curry of the Cleveland County Sheriff's Department to offer expert testimony vouching for Becky and Violet's credibility; erred by excluding evidence that Defendant had cooperated with investigating officers; and erred by allowing Carol Hollandsworth to testify as an expert and to vouch for Becky and Violet's credibility. In addition, Defendant contends that, to the extent that any of his substantive challenges to the trial court's judgments were not properly preserved for appellate review, he is entitled to relief on ineffective assistance of counsel grounds. After careful review of Defendant's challenges to the trial court's judgments in light of the record and the applicable law, we conclude that Defendant is not entitled to any relief from the trial court's judgments.

## I. Factual Background

### A. Substantive Facts

#### 1. State's Evidence

Becky, who was born in 1995, was sixteen years old at the time of trial. Her sister, Violet, was born in 1993 and was eighteen at the time of trial. Defendant, who was married to their mother's sister and who lived with his wife and three children in Casar, was Becky and Violet's uncle.

Defendant began molesting Becky and Violet around 2001 and continued to do so until 2006. The sexual abuse of which Defendant was accused usually occurred at family gatherings held at Defendant's home; however, Defendant was also accused of abusing Becky and Violet at other times when he was alone with one or the other of them.

Becky testified that Defendant had sexually molested her about fifty times, beginning when she was five or six years old and continuing until she was twelve. The abuse that Becky described consisted of Defendant rubbing her vagina with his hands and forcing her to touch his penis. Defendant usually touched Becky during nighttime games of hide-and-seek, during which she would hide in Defendant's yard away from the other children. Becky also recalled an incident that occurred during a family vacation to Hershey, Pennsylvania, when Defendant gave her a piggyback ride and tried to rub her vagina while carrying her on his back. On another occasion, Defendant sat Becky on his lap and made her watch a pornographic video, in which a child performed fellatio, and asked Becky if she wanted to do that to him. During one family gathering on the Fourth of July, Defendant sat

**STATE v. DEW**

[225 N.C. App. 750 (2013)]

Becky on his lap to watch fireworks. While she was on his lap, Defendant made her put her hand inside his pants and guided her hand up and down his penis. Becky thought she was the only one who was subjected to this abuse.

Violet testified that Defendant began molesting her when she was six or seven years old. Like Becky, Violet recalled family gatherings held at Defendant's house at which she and the other girls would play hide and seek. During these games, Defendant would put his hand inside Violet's pants and move his finger back and forth on her vagina. According to Violet, Defendant touched her in this manner on ten to twenty different occasions. On one occasion, Defendant rubbed Violet's vagina so much that she developed a rash there.

Violet recalled several other instances during which she was subjected to sexual abuse by Defendant as well. When she was six or seven years old, Defendant let her sit on his lap and drive his truck. As she drove, Defendant put his hand inside Violet's pants and rubbed his finger against her vagina until they arrived at his house. Defendant also touched Violet while giving her a piggyback ride on two occasions, one of which occurred in Hershey and the other of which occurred at Defendant's home. In addition, Violet recalled seeing a screensaver on Defendant's computer depicting the silhouette of a female performing fellatio. Once, while Violet was alone with Defendant at his house, Defendant began tickling her. After grabbing her ankle and jerking her up so that she was looking up at his stomach and pelvic area, Defendant asked Violet to put her hand inside his pants. After Violet failed to make any response to this inquiry, Defendant took her hand and put it in his pants, at which point his breathing got heavy and he said that "it was okay."

When she reached the fourth or fifth grade, Violet told Defendant to stop touching her, an instruction with which he complied. Several years later, Violet told a friend that Defendant had abused her when she was younger. About six months later, after watching a television program with her mother about victims of child molestation, Violet went to pick her sister up from basketball practice. After becoming very upset, Violet told her sister that Defendant had molested her as a child. In response, Becky told Violet that she had been abused by Defendant as well. Upon returning home, both girls told their mother, who reported the incidents to Detective Curry.

Carol Hollandsworth, a family therapist, provided counseling to both Violet and Becky. After describing Violet and Becky's mental

states, Ms. Hollandsworth testified that both children behaved in a manner that was consistent with symptoms exhibited by children who had been sexually abused.

### 2. Defendant's Evidence

Defendant's three children testified that the children in Defendant's extended family only played hide-and-seek a few times and that Defendant rarely played hide-and-seek with them. During family gatherings, the adults, including Defendant, usually stayed together while the children played separately. None of Defendant's children recalled seeing anything suspicious about the manner in which Defendant interacted with Becky and Violet or ever heard Violet and Becky claim to have been molested.

Defendant acknowledged having hosted family gatherings at his home and admitted that he had played hide-and-seek with the girls on one occasion when they were younger. In addition, Defendant admitted that he had given both Violet and Becky multiple piggyback rides. Although he had pornographic materials in his home, Defendant denied having ever shown such materials to Violet and Becky and repeatedly denied having ever molested either child.

### B.  Procedural History

On 12 January 2011, the Cleveland County grand jury returned bills of indictment charging Defendant with three counts of taking indecent liberties with a minor involving acts committed against Violet and three counts of taking indecent liberties with a child involving acts committed against Becky. The charges against Defendant came on for trial before the trial court and a jury at the 8 December 2011 criminal session of Cleveland County Superior Court. On 13 December 2011, the jury returned verdicts convicting Defendant as charged. At the ensuing sentencing hearing, the trial court entered judgments sentencing Defendant to six consecutive terms of 16 to 20 months imprisonment, the first three of which involved active terms of incarceration and the last three of which were suspended on the condition that Defendant be placed on supervised probation for 36 months subject to certain terms and conditions. Defendant noted an appeal to this Court from the trial court's judgments.

## II. Legal Analysis

### A. Ms. M.'s Testimony

[1] In his first challenge to the trial court's judgments, Defendant contends that the trial court erred by allowing Angela M., the mother of Becky and Violet, to testify that she believed the victims. More specifically, Defendant challenges the admission of Ms. M.'s testimony that,

> They said just—they—I don't remember even which one of it was, but they said they had been messed with. And I said, what? They said, "We've been molested." And I said, "By who?" And they said, "Uncle John." And I just jumped up and down and screamed because I couldn't, you know, it was hard to believe. And I said, "No he didn't, no he didn't." And I mean, not telling them that he really didn't, but just—I couldn't believe that he'd done it. But I believe my girls and I looked at them and I—and I just remember hugging them and I said, oh God. You know what this means? And I said, you know, I'll do whatever I have to do to prosecute and they understood that.

According to Defendant, Ms. M.'s statement that "I believe my girls" was inadmissible.

As he candidly acknowledges in his brief, Defendant did not object to the admission of this testimony at trial. For that reason, we review this aspect of Defendant's challenge to the trial court's judgments for plain error. N.C. R. App. P. 10(a)(4); *State v. Mendoza*, 206 N.C. App. 391, 395, 698 S.E.2d 170, 174 (2010). In order to establish that plain error occurred, a convicted criminal defendant must show that a fundamental error occurred during the defendant's trial which " 'had a probable impact on the jury's finding that the defendant was guilty.' " *State v. Lawrence*, ___ N.C. ___, ___, 723 S.E.2d 326, 333 (2012) (quoting *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)). "[P]lain error review should be used sparingly, only in exceptional circumstances, to reverse criminal convictions on the basis of unpreserved error[.]" *Id.*

A lay witness is entitled to testify "in the form of opinions or inferences . . . [which are] (a) rationally based on [his] perception . . . and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701. When taken in context, Ms. M.'s statement that she believed her

daughters was made in the course of a discussion of her emotional state at the time that Violet and Becky informed her that Defendant had sexually abused them. Assuming, without in any way deciding, that the admission of this portion of Ms. M.'s testimony was improper, Defendant has failed to show that, absent the error, the jury would have probably reached a different result. Simply put, in view of the relatively incidental nature of the challenged statement and the fact that most jurors are likely to assume that a mother will believe accusations of sexual abuse made by her own children, we cannot conclude that the challenged portion of Ms. M.'s testimony had any significant impact on the jury's decision to convict Defendant. *See State v. Ramey*, 318 N.C. 457, 466, 349 S.E.2d 566, 572 (1986) (stating that "[i]t is unlikely that the jury gave great weight to the fact that a mother believed that her son was truthful"). As a result, after reviewing the record in its entirety, we cannot hold that the trial court committed plain error by failing to preclude Ms. M. from testifying that she believed her daughters.

### B.  Detective Curry's Testimony

[2]  Secondly, Defendant argues that Detective Curry impermissibly vouched for Becky and Violet's credibility. Once again, given that Defendant did not object to the admission of the challenged testimony at trial, we review the trial court's failure to preclude the admission of this testimony utilizing a plain error standard of review. After engaging in the required plain error review, we conclude that Defendant's argument lacks merit.

As an initial matter, Defendant argues that Detective Curry testified that the children "actually remembered incidents, attesting as an expert that the incidents actually happened as they claimed." Defendant bases this claim upon the following testimony, which the State elicited on direct examination:

> Q. What were your impressions of [Becky], her manner and her demeanor when you met with her in November of 2010?
>
> A. [Becky] appeared to be—to have more of a—she was matter of fact. She remembered less. She remembered incidents. She remembered very specific incidents but he didn't—she did not remember times. And she was—and in looking and trying to get her to explain specific incidents, she would actually remember—it would appear that she would remember as we were

talking if I said something that would [cue] her to her memory. Not a lead, but a [cue]. So, that she would actually think about when I . . . would say where were you, she would literally think and then say oh yeah, I remember this. That's very common as well. But time, she still didn't—like [Violet], had very limited concept of time because of the age of the incident.

Although Defendant correctly asserts that a witness may not vouch for the credibility of the alleged victim in a child sexual abuse case, *State v. Stancil*, 355 N.C. 266, 266-67, 559 S.E.2d 788, 789 (2002) (*per curiam*); *State v. Aguallo*, 318 N.C. 590, 599, 350 S.E.2d 76, 81 (1986) (holding that expert testimony to the effect that the victim was "believable" was inadmissible), a careful examination of the challenged testimony, when read in context, clearly indicates that, instead of vouching for the veracity of Becky's allegations, Detective Curry was simply describing Becky's appearance and behavior as she observed it during their meeting.

According to well-established North Carolina law, a witness is entitled to utilize "shorthand statements of facts" during the course of his or her testimony, *State v. Eason*, 336 N.C. 730, 747, 445 S.E.2d 917, 927 (1994) (stating that N.C. Gen. Stat. § 8C-1, Rule 701 allows the admission of "what are frequently called 'shorthand statements of facts' "), *cert. denied*, 513 U.S. 1096, 115 S. Ct. 764, 130 L. Ed. 2d 661 (1995), on the theory that "instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of persons, animals, and things, derived from observation of a variety of facts presented to the senses at one and the same time, are, legally speaking, *matters of fact*, and are admissible in evidence." *State v. Gobal*, 186 N.C. App. 308, 317, 651 S.E.2d 279, 285 (2007) (emphasis in the original) (quoting *State v. Lloyd*, 354 N.C. 76, 109, 552 S.E.2d 596, 620 (2001)), *aff'd*, 362 N.C. 342, 661 S.E.2d 732 (2008). Detective Curry began her response to the prosecutor's question concerning Becky's "manner" and "demeanor" by detailing Becky's appearance, expressions, mannerisms, and thought processes. When considered in context, the challenged testimony consisted of nothing more than a permissible discussion of the manner in which Becky communicated with Detective Curry, including the limitations to which Becky's ability to recount past events was subject, based on Detective Curry's observations during her meeting with Becky. *State v. Waddell*, 130 N.C. App. 488, 501-02, 504 S.E.2d 84, 92 (1998) (holding that witness's descriptions of a child's conduct constituted an admissible "short-

STATE v. DEW

[225 N.C. App. 750 (2013)]

hand statement of fact"). As a result, this component of Detective Curry's testimony was not inadmissible.

**[3]** Secondly, Defendant challenges Detective Curry's assertion that Becky and Violet were "extremely credible." The challenged testimony occurred on cross-examination, when Detective Curry testified that:

> Q. Okay. Did you ever tell them that I—I believe you two and I think you are extremely credible?
>
> A. Did I ever tell who that?
>
> Q. [Violet] and/or [Becky]?
>
> A. I'm sure I did.

Although the statement upon which Defendant predicates this aspect of his challenge to the trial court's judgments clearly constitutes an affirmation of Becky and Violet's credibility, "[a] defendant is not prejudiced by . . . error resulting from his own conduct." N.C. Gen. Stat. § 15A-1443(c). As a result, "a defendant who invites error has waived his right to all appellate review concerning the invited error, including plain error review." *State v. Barber*, 147 N.C. App. 69, 74, 554 S.E.2d 413, 416 (2001), *disc. review denied and dismissed*, 355 N.C. 216, 560 S.E.2d 142 (2002). The testimony about which Defendant now complains stemmed from language contained in a leading question posed by Defendant's trial counsel as part of an apparent effort to challenge Detective Curry's credibility. Having directly posed a question that incorporated inadmissible material, Defendant is simply not entitled to seek appellate relief on the grounds that the challenged testimony should have been excluded. *See Gobal*, 186 N.C. App. at 319, 651 S.E.2d at 287 (stating that "[s]tatements elicited by a defendant on cross-examination are, even if error, invited error, by which a defendant cannot be prejudiced as a matter of law"). Thus, since this alleged error was clearly invited by Defendant, it provides no basis for an award of appellate relief. *State v. Gay*, 334 N.C. 467, 485, 434 S.E.2d 840, 850 (1993) (stating that " 'invited error' does not merit relief") (citing *State v. Rivers*, 324 N.C. 573, 575-76, 380 S.E.2d 359, 360 (1989); *State v. Greene*, 324 N.C. 1, 12, 376 S.E.2d 430, 438 (1989), *sentence vacated on other grounds*, 494 U.S. 1022, 110 S. Ct. 1465, 108 L. Ed. 2d 603 (1990); *State v. Silvers*, 323 N.C. 646, 655, 374 S.E.2d 858, 864 (1989)). As a result, Defendant is not entitled to appellate relief based upon either of his challenges to Detective Curry's testimony.

## C. Defendant's Cooperation

**[4]** Thirdly, Defendant contends that the trial court erred by refusing to allow the admission of evidence that he cooperated with Detective Curry. In support of this assertion, Defendant points to his cross-examination of Detective Curry, during which the trial court sustained the State's objection when his trial counsel asked, "Now, I was—was Mr. Dew cooperative with you?" Defendant is not entitled to relief from the trial court's judgments on the basis of this ruling.

"It is well established that an exception to the exclusion of evidence cannot be sustained where the record fails to show what the witness' testimony would have been had he been permitted to testify." *State v. Simpson*, 314 N.C. 359, 370, 334 S.E.2d 53, 60 (1985) (citing *State v. Cheek*, 307 N.C. 552, 561, 299 S.E.2d 633, 639 (1983)) (other citations omitted). For that reason, "in order for a party to preserve for appellate review the exclusion of evidence, the significance of the excluded evidence must be made to appear in the record and a specific offer of proof is required unless the significance of the evidence is obvious from the record." *Id.* (citing *Currence v. Hardin*, 296 N.C. 95, 99-100, 249 S.E.2d 387, 390 (1978)). "In the absence of an adequate offer of proof, [w]e can only speculate as to what the witness' answer would have been.'" *State v. Ginyard*, 122 N.C. App. 25, 33, 468 S.E.2d 525, 531 (1996) (quoting *State v. Barton*, 335 N.C. 741, 749, 441 S.E.2d 306, 310-11 (1994) (internal quotation marks omitted)). As a result of the fact that the record does not contain the substance of any answer that Detective Curry might have given to the question posed by Defendant's trial counsel, we have no basis for determining the extent, if any, to which the trial court's ruling might have prejudiced Defendant. *State v. Lynch*, 337 N.C. 415, 423, 445 S.E.2d 581, 584 (1994) (holding that the defendant's failure to "show what the response of the witness would have been if he had been allowed to answer" precluded a determination of whether "the defendant was prejudiced by the exclusion of the answers"); *State v. Miller*, 321 N.C. 445, 452, 364 S.E.2d 387, 391 (1988) (stating that, "[b]y failing to preserve the evidence for our review, defendant has deprived us of the necessary record from which to ascertain if the alleged error was prejudicial"). As a result, Defendant is not entitled to relief from the trial court's judgments on the basis of this contention.

## D. Expert Testimony of Ms. Hollandsworth

Fourthly, Defendant argues that the trial court erred by admitting the testimony of Ms. Hollandsworth in two different respects. First,

Defendant argues that the trial court erred by allowing Ms. Hollandsworth to testify as an expert in family counseling. Secondly, Defendant argues that the trial court erroneously allowed Ms. Hollandsworth to vouch for the credibility of Violet and Becky. We do not believe that either of these contentions has merit.

### 1. Ms. Hollandsworth's Expert Qualification

[5] In the course of challenging the trial court's decision to allow Ms. Hollandsworth to present expert testimony, Defendant argues that Ms. Hollandsworth lacked the necessary credentials and failed to utilize an appropriate methodology. We disagree with both of Defendant's assertions.

"[E]xpert testimony is properly admissible when such testimony can assist the jury to draw certain inferences from facts because the expert is better qualified." *State v. Bullard*, 312 N.C. 129, 139, 322 S.E.2d 370, 376 (1984). In ruling upon a request to allow the admission of expert testimony, "the trial court must determine whether the expert's method of proof is sufficiently reliable as an area for expert testimony." *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 459, 597 S.E.2d 674, 686 (2004) (citing *State v. Goode*, 341 N.C. 513, 527-29, 461 S.E.2d 631, 639-40 (1995)). An "expert's testimony [does not have to be shown to be] conclusively reliable or indisputably valid before it can be admitted into evidence," since the credibility of and weight to be given to the expert's testimony is a question for the jury rather than the trial court. *Id.* at 460-61, 597 S.E.2d at 687-88. As a result of the fact that "the trial judge is afforded wide latitude of discretion when making a determination about the admissibility of expert testimony," *Bullard*, 312 N.C. at 140, 322 S.E.2d at 376, we review the trial court's decision to allow Ms. Hollandsworth to testify as an expert using an abuse of discretion standard of review. *State v. Parks*, 96 N.C. App. 589, 592, 386 S.E.2d 748, 750 (1989).

Ms. Hollandsworth clearly possessed the qualifications needed to present expert testimony. Among other things, Ms. Hollandsworth has earned a master's degree in Christian counseling and has completed additional professional training relating to the trauma experienced by children who have been subjected to sexual abuse. Ms. Hollandsworth is engaged in private practice as a therapist and is a licensed family therapist and professional counselor. According to Ms. Hollandsworth, over half of her clients have been subjected to some sort of trauma, with a significant number of these patients having suffered sexual abuse. As a result, the trial court had ample justi-

fication for allowing Ms. Hollandsworth to testify as an expert witness. *State v. Love*, 100 N.C. App. 226, 233, 395 S.E.2d 429, 433 (1990) (holding that an individual with a master's degree in counseling who had counseled children suspected of having been sexually abused was properly qualified to present expert testimony), *disc. review denied*, 328 N.C. 95, 402 S.E.2d 423 (1991).

Although Defendant challenges the admission of Ms. Hollandsworth's testimony on reliability grounds, he has failed to demonstrate that the methods that she employed in the course of her work with Becky and Violet were unreliable. Instead, Defendant simply points to Ms. Hollandsworth's testimony to the effect that there is no way to tell whether any particular individual has been sexually abused based solely upon what he or she says and that different people respond to the experience of having been sexually abused in different ways. However, the appellate courts in this jurisdiction have consistently allowed the admission of expert testimony, such as that provided by Ms. Hollandsworth, which relies upon personal observations and professional experience rather than upon quantitative analysis. *See, e.g., State v. Kennedy*, 320 N.C. 20, 31-32, 357 S.E.2d 359, 366-67 (1987) (admitting testimony describing the symptoms exhibited by sexually abused children and opining that the alleged victims exhibited symptoms consistent with sexual abuse); *Love*, 100 N.C. App. at 233, 395 S.E.2d at 433 (1990) (holding that "[a]llowing experts to testify as to the symptoms and characteristics of sexually abused children and to state their opinions that the symptoms exhibited by the victim were consistent with sexual or physical abuse is proper"). As a result, having concluded that Defendant's challenges to Ms. Hollandsworth's credentials and the reliability of the methods that Ms. Hollandsworth employed lack merit, we hold that the trial court did not err by allowing Ms. Hollandsworth to testify as an expert witness.

## 2. Vouching for the Children's Credibility

[6] Secondly, Defendant argues that the trial court erred by allowing Ms. Hollandsworth to vouch for Becky and Violet's credibility. Once again, we do not find Defendant's argument persuasive.

On direct examination, the prosecutor asked Ms. Hollandsworth, "Is it common for children, especially younger children, who experience trauma of this nature to be unable or unwilling to tell a trusted family member even when they live in a loving home?" In response, Ms. Hollandsworth stated that:

What research says is 60% of cases like this do not even get reported. And in my experience with clients, this is young to be even talking about it actually. Most of my cases people were after college age into young adulthood before they even talked about it. And, again, it goes back to that sense of guilt and shame. And this is common in literature and in what I've seen in my cases. That feeling of being bad or as if they participated. What research says is that the—

At this point, the trial court sustained an objection lodged by Defendant's trial counsel.

As we have already noted, a witness is not permitted to vouch for the credibility of the alleged victim in a child sexual abuse case. *State v. Aguallo*, 322 N.C. 818, 822, 370 S.E.2d 676, 678 (1988) (stating that "this Court has held it [to be] reversible error for medical experts to testify as to the veracity of the victim," including situations in which "experts have testified that the victim was believable, had no record of lying, and had never been untruthful") (citing *Aguallo*, 318 N.C. at 597-600, 350 S.E.2d at 81-82; *State v. Kim*, 318 N.C. 614, 619-21, 350 S.E.2d 347, 350-52 (1986); and *State v. Heath*, 316 N.C. 337, 340-44, 341 S.E.2d 565, 568-69 (1986)). According to Defendant, Ms. Hollandsworth improperly vouched for the credibility of Becky and Violet by describing child sexual abuse cases with which she was familiar as "cases like this." We do not, however, believe that the challenged testimony constitutes impermissible vouching for the children's credibility.

The cases in which this Court and the Supreme Court have reversed convictions based upon the principle upon which Defendant relies generally involve testimony that directly comments on the credibility of the alleged victim or sets out the witness' subjective beliefs concerning the veracity of the alleged victim's allegations. *See, e.g., Aguallo*, 318 N.C. at 599, 350 S.E.2d at 81 (holding testimony that " 'I think she's believable' " to be inadmissible); *State v. Keen*, 309 N.C. 158, 162, 305 S.E.2d 535, 537 (1983) (holding testimony " '[t]hat an attack occurred on him; [] this was reality' " to be inadmissible); *State v. Horton*, 200 N.C. App. 74, 78, 682 S.E.2d 754, 757-58 (2009) (holding testimony that, " '[i]n all of my training and experience, when children provide those types of specific details it enhances their credibility' " to be inadmissible). When read in context, Ms. Hollandsworth's testimony did not constitute a comment upon Becky and Violet's veracity. Ms. Hollandsworth never directly stated that

IN. THE COURT OF APPEALS 763

STATE v. DEW

[225 N.C. App. 750 (2013)]

Becky and Violet were believable. Instead, the challenged testimony describes the actions and reactions of sexual abuse victims in general and is devoid of any direct comment upon the credibility of the witnesses upon whom the State's case hinges. As a result, the trial court did not, contrary to Defendant's contention, allow Ms. Hollandsworth to vouch for the children's credibility in an impermissible manner.

## E. Ineffective Assistance of Counsel

[7] Finally, Defendant contends that, if this Court concludes that any of the claims discussed above have not been properly preserved for appellate review, he is entitled to relief on ineffective assistance of counsel grounds. We disagree.

> In analyzing ineffective assistance of counsel claims, we utilize a two-part test, under which the "[d]efendant must show (1) that 'counsel's performance was deficient,' meaning it 'fell below an objective standard of reasonableness,' and (2) that 'the deficient performance prejudiced the defense,' meaning that 'counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' " . . . In proving whether counsel's actions resulted in prejudice to the defendant, he or she must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[,]" with a "reasonable probability" being "a probability sufficient to undermine confidence in the outcome."

*State v. Womack*, ___ N.C. App. ___, ___, 712 S.E.2d 193, 196 (2011) (quoting *State v. Mohamed*, 205 N.C. App. 470, 480-81, 696 S.E.2d 724, 733 (2010) (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984)), and 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069, 80 L. Ed. 2d at 699. In the event that an ineffective assistance of counsel claim cannot be properly evaluated "without such ancillary procedures as the appointment of investigators or an evidentiary hearing," that claim should be dismissed "without prejudice to the defendant's right to reassert [that claim] during a subsequent [motion for appropriate relief] proceeding." *State v. Fair*, 354 N.C. 131, 166-67, 557 S.E.2d 500,

524-25 (2001) (citations omitted), *cert. denied*, 535 U.S. 1114, 122 S. Ct. 2332, 153 L. Ed. 2d 162 (2002).

After carefully reviewing the record, we conclude that Defendant is not entitled to relief on the basis of any of the ineffective assistance of counsel claims that he has asserted in his brief. Having upheld the admission of Detective Curry's description of her meeting with Becky and the challenged portions of Ms. Hollandsworth's testimony on the merits, we conclude that Defendant has failed to establish that there were any deficiencies in the representation which he received from his trial counsel with respect to this evidence. *State v. Mewborn*, 200 N.C. App. 731, 738, 684 S.E.2d 535, 540 (2009) (citing *State v. Lee*, 348 N.C. 474, 492, 501 S.E.2d 334, 345 (1998)) (stating that "the failure to object to admissible evidence does not constitute an error which would satisfy the first prong of the *Strickland* test"). In addition, we cannot conclude, on the basis of the present record, that there is any reasonable probability that the outcome at Defendant's trial would have been different had his trial counsel persuaded the trial court to exclude Ms. M.'s expression of confidence in her daughters' truthfulness or to overrule the State's objection to the question inquiring about the extent of Defendant's cooperation with investigating officers. Finally, given that we do not know why Defendant's trial counsel elected to inquire about Detective Curry's confidence in Becky and Violet's veracity, we are unable, on the basis of the present record, to properly evaluate the validity of Defendant's challenge to the admission of the relevant portion of Detective Curry's testimony and dismiss Defendant's challenge to the representation which he received from his trial counsel with respect to the admission of that evidence without prejudice to his ability to assert that claim in a future motion for appropriate relief. As a result, Defendant is not entitled to relief from the trial court's judgments on ineffective assistance of counsel grounds.

### III. Conclusion

Thus, for the reasons set forth above, we conclude that none of Defendant's challenges to the trial court's judgments have merit. As a result, the trial court's judgments should, and hereby do, remain undisturbed.

No Error.

Chief Judge MARTIN and Judge DILLON concur.