An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-16

NORTH CAROLINA COURT OF APPEALS

Filed: 21 October 2014

STATE OF NORTH CAROLINA

v.

NEIL STANLEY PAGE, JR.

New Hanover County
No. 10CRS055472-74
11CRS10750

Appeal by Defendant from judgments entered 23 May 2013 by Judge Claire V. Hill in New Hanover County Superior Court. Heard in the Court of Appeals 13 August 2014.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Grady L. Balentine, Jr., for the State.*

*McCotter Ashton, P.A., by Kirby H. Smith, III, and Rudolph A. Ashton, III, for the Defendant.*

DILLON, Judge.

Neil Stanley Page, Jr. ("Defendant"), appeals from judgments entered upon a jury verdict finding him guilty of robbery with a dangerous weapon; felonious breaking and entering; assault with a deadly weapon inflicting serious injury; first-degree kidnapping; and second-degree kidnapping.

I.   Background

The evidence at trial tended to establish the following facts: On 26 May 2010, Defendant went to the home of Tracy Moore and asked her whether any of the cars in her yard were for sale. Ms. Moore replied that they were not.

The following day, Ms. Moore was upstairs in her home with her newborn grandchild and with the baby's mother, referred to herein as Ms. Allen, when she heard a loud noise downstairs. Ms. Moore went downstairs to investigate and discovered three men at her door. One of the intruders pointed a gun at Ms. Moore and demanded money, asking her where her safe was located. He dragged her into her den and attempted to tie her up with a telephone cord. He pistol-whipped her in the face and threatened to kill her as he continued demanding that she tell him where her money was hidden. Eventually, this intruder told Ms. Moore that if she did not tell him where she kept her money, one of the other intruders would go upstairs and take her grandchild. Ms. Moore finally relented and told him the location of a small safe, which contained approximately $700.

Overhearing the commotion, Ms. Allen shut herself in an upstairs bathroom and dialed 911. One of the other intruders noticed Ms. Allen's presence, kicked in the bathroom door,

pulled Ms. Allen's shirt over her face, and dragged her downstairs to the den.

Ms. Moore told one of the investigating officers who arrived at her home shortly after the break-in that she recognized the intruder who struck her as the man who had inquired about the car for sale the day before. However, the officer was unable to complete his interview with Ms. Moore at that time as Ms. Moore was experiencing pain from her injuries. A friend took her to a nearby hospital for treatment. As a result of the attack, Ms. Moore suffered bruising, a swollen head, a broken toe, and an injury to her right eye.

Later, Ms. Moore was shown a photo line-up which included a picture of Defendant, but she failed to identify Defendant as one of the intruders. However, at trial, during her direct examination by the State, Ms. Moore positively identified Defendant as one of the intruders. Ms. Allen, on the other hand, failed to identify Defendant at either the photo line-up or in court.

At trial, the jury found Defendant guilty of robbery with a dangerous weapon; felonious breaking and entering; assault with a deadly weapon inflicting serious injury; first-degree kidnapping; and second-degree kidnapping. Defendant admitted to

his status as a habitual felon. The trial court entered two judgments. First, the trial court consolidated the robbery, breaking and entering, and kidnapping charges and sentenced Defendant to prison for 110 months to 141 months. Second, the trial court entered a separate judgment on the charge for assault with a deadly weapon inflicting serious injury, sentencing Defendant to prison for 110 months to 141 months. The trial court ordered that the sentences run consecutively. Defendant noted his appeal in open court.

## II. Analysis

Defendant makes five arguments on appeal. We have carefully reviewed each argument; and, for the reasons stated below, we find no reversible error.

### A. Fair Trial

Defendant first contends that one of the jurors slept during portions of the trial, depriving him of his right to a fair trial and verdict rendered by twelve impartial and competent jurors. We disagree.

The record reveals that the trial judge noticed that one of the jurors appeared fatigued during a morning session of the trial and alerted counsel to this fact after the jury had left the courtroom for a morning recess. The judge asked counsel for

recommendations on how to proceed. Defendant's counsel requested that the judge address the issue with the juror privately during the lunch break. During the lunch break, the judge assured Defendant's counsel that she had been monitoring the situation and that the juror had been more attentive after the morning recess. The judge then met with the juror privately and stressed the importance of being alert and attentive. Once the judge was satisfied that the juror understood, the other jurors were called back into the courtroom for the afternoon session. Defendant's counsel never suggested that the juror's conduct prejudiced Defendant and the record contains no indication to the contrary.

Our holding in *State v. Williams*, 33 N.C. App. 397, 235 S.E.2d 86, *disc. review denied*, 293 N.C. 258, 237 S.E.2d 540 (1977), is instructive. In *Williams*, the trial judge noticed that one of the jurors had fallen asleep during cross-examination. *Id.* at 398, 237 S.E.2d at 87. The judge asked the jurors to stand and told them that they were not allowed to sleep. *Id.* We observed that the defendant's counsel proceeded with cross-examination "without so much as suggesting to the court that there was a possibility of prejudice to the defendant." *Id.* We held that the trial court did not abuse its

discretion in failing to declare a mistrial where there was neither a suggestion by counsel that the defendant was prejudiced nor any indication in the record otherwise. *Id.*

In the present case, like in *Williams*, there is no indication in the record that Defendant was prejudiced. Furthermore, unlike in *Williams*, there is nothing in the record in the present case indicating that the juror actually fell asleep during any portion of the proceedings. Accordingly, this argument is overruled.

## B. In-Court Identification

Defendant next asserts that the trial court erred in allowing Ms. Moore's in-court identification of him as one of the intruders when she had previously failed to identify Defendant from the photo line-up. Defendant failed to object to Ms. Moore's in-court identification at trial. Unpreserved issues related to the trial court's rulings on the admissibility of evidence are subject to plain error review. *State v. Gregory*, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996). To establish plain error, Defendant bears the burden of demonstrating that a different result probably would have been reached but for the error. *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012).

Generally, a witness is allowed to make an in-court identification of a defendant; and any uncertainty goes to the weight of the testimony rather than its admissibility. *State v. Billups*, 301 N.C. 607, 615-16, 272 S.E.2d 842, 849 (1981). In evaluating the credibility of a witness, a jury may consider the witness's prior inconsistent statements. *See, e.g.*, *State v. Lynn*, 157 N.C. App. 217, 225, 578 S.E.2d 628, 634 (2003). The final credibility determination nevertheless remains the responsibility of the jury. *State v. Legins*, 184 N.C. App. 156, 159, 645 S.E.2d 835, 837 (2007), *aff'd per curiam*, 362 N.C. 83, 653 S.E.2d 144 (2007).

In his brief, Defendant contends that Ms. Moore's identification was based on "information subsequently learned from law enforcement officers and prosecutors during the course of the investigation and prosecution of [the] case" rather than her own personal knowledge. Defendant's theory was advanced vigorously by his counsel at trial. We believe, however, that Ms. Moore's inability to identify Defendant from the photo line-up went to the weight and not to admissibility, *see Billups*, 301 N.C. at 616, 272 S.E.2d at 849, and that it was the jury's responsibility to evaluate the credibility of her testimony.

Defendant cites the Eyewitness Identification Reform Act as the basis for finding that it was plain error for the trial court to allow Ms. Moore's in-court identification. *See* N.C. Gen. Stat. § 15A-284.50, *et seq.* (2010). Specifically, Defendant cites to the portion of the Act which requires that if a witness identifies a suspect in a line-up, the line-up administrator "shall seek and document a clear statement from the eyewitness, at the time of the identification and in the eyewitness's own words, as to the eyewitness's confidence level that the person identified in the given line-up is the perpetrator." *Id.* § 15A-284.52(b)(12). In citing this statute, Defendant complains in his brief that the line-up administrator did not testify at trial, nor was any statement from Ms. Morgan offered "indicating that she identified [Defendant] in this line-up as one of her attackers." Defendant's reliance on this statute is misplaced. The record shows that Ms. Moore did not positively identify Defendant from the photo line-up. Further, the State relied upon Ms. Moore's in-court identification of Defendant.

Defendant has failed to demonstrate error; and, therefore, this argument is overruled.

C. Guilty Pleas and Plea Arrangements

Defendant next asserts it was plain error for the trial court to allow testimony regarding guilty pleas and plea arrangements from Defendant's accomplices.

Our courts have long recognized "[t]he 'clear rule' [] that evidence of convictions, guilty pleas, and pleas of nolo contendere of non-testifying co-defendants is inadmissible unless introduced for a legitimate purpose, i.e., used for a purpose other than evidence of the guilt of the defendant on trial." *State v. Batchelor*, 157 N.C. App. 421, 430, 579 S.E.2d 422, 429, *disc. review denied*, 357 N.C. 462, 586 S.E.2d 101 (2003). Our Supreme Court has explained that the rationale for this rule is twofold: First, "a defendant's guilt must be determined solely on the basis of the evidence presented *against him;*" and second, "the introduction of such a plea by a co-defendant, *when he or she has not testified at defendant's trial*, would also deprive the defendant of his constitutional right of confrontation and cross-examination." *State v. Rothwell*, 308 N.C. 782, 785-86, 303 S.E.2d 798, 801 (1983) (emphasis in original). However, "if evidence of a *testifying* co-defendant's guilty plea is introduced for a legitimate purpose, it is proper to admit it." *Id.* at 786, 303 S.E.2d at 801. Furthermore, "[a] defendant is not prejudiced by the

granting of relief which he has sought or by error resulting from his own conduct." N.C. Gen. Stat. § 15A-1443(c) (2010). A defendant thus cannot complain of error he invites. *State v. Rivers*, 324 N.C. 573, 575-76, 380 S.E.2d 359, 360 (1989).

In the present case, it was counsel for Defendant rather than the prosecutor who initially brought out the guilty pleas of the accomplices. Specifically, the following colloquy took place between counsel for Defendant and Ms. Moore during cross-examination:

> Q. Then at some point you actually spoke to the District Attorney?
>
> A. Yes.
>
> Q. And you did that a few times, didn't you?
>
> A. Uh-huh.
>
> Q. You had to do it on at least one occasion when Aaron Spicer pled guilty to this charge, didn't you?
>
> A. Yes.
>
> Q. You did it again when E. J. Dukes pled out, Ernest Dukes, didn't you, ma'am?
>
> A. Yes.
>
> Q. You did it again when they were arranging the plea agreement for Mr. Chambers, didn't you, ma'am?
>
> A. Yes, I did.

Despite the fact that Defendant's counsel elicited this testimony, Defendant now alleges it was plain error for the trial court not to rule on its own motion to exclude it.

In *Rivers*, the defendant similarly argued that the trial court committed plain error by not ruling on its own motion that hearsay testimony elicited by the defendant's counsel was inadmissible*.  Id.* at 575-76, 380 S.E.2d at 360.  The defendant neither objected to the testimony nor moved to strike it at trial; and our Supreme Court held that the trial court had not erred, observing that the defendant could not "invalidate a trial by . . . eliciting evidence on cross-examination which he might have rightfully excluded if the same evidence had been offered by the State."  *Id.* at 576, 380 S.E.2d at 360.

Just as in *Rivers*, in the present case we conclude that the trial court did not commit plain error in not ruling on its own motion that this excludable evidence elicited by the defense was inadmissible.

### D. Jury Instructions

Defendant next argues that the following portion of the trial court's instruction to the jury on the first-degree kidnapping charge was erroneous:

> For you to find the defendant guilty . . . ,
> the State must prove five things beyond a

reasonable doubt.

. . .

> Third, that the defendant confined, . . . or removed that person for the purpose of facilitating his commission of robbery or breaking and entering or terrorizing that person or another person. Terrorizing means more than just putting another in fear. It means putting that person in some high degree of fear, a state of intense fright or apprehension.

Defendant contends that this instruction was erroneous in two respects.

First, Defendant contends that there was no evidence that he *intended* to terrorize Ms. Moore. We are unpersuaded. Rather, we believe that there was sufficient evidence from which a jury could reasonably find that Defendant intended to terrorize Ms. Moore. For instance, there was evidence which tended to show that Defendant pistol-whipped Ms. Moore, attempted to tie her up with a telephone cord, dragged her through the house, threatened to kidnap her grandchild, and threatened to kill her.

Second, Defendant contends that the instruction puts "the focus on the issue of terrorizing on the [victim's perception], and not the Defendant['s intent]." Again, we are unpersuaded. Though the instruction does define terrorizing as "putting a

person in some high degree of fear[,]" the instruction does not provide that the jury need find that Ms. Moore was put in a high degree of fear but rather that Defendant acted "for the purpose of" putting Ms. Moore in some high degree of fear. Furthermore, this Court has approved a jury instruction containing a nearly identical definition of "terrorizing" in *State v. Bonilla*, 209 N.C. App. 576, 585, 706 S.E.2d 288, 295 (2011). Accordingly, this contention is overruled.

### E. Double Jeopardy

In Defendant's final argument, he contends that his conviction for both first-degree kidnapping and assault with a deadly weapon inflicting serious injury violates the constitutional guarantee against double jeopardy. Specifically, he asserts his consecutive sentences for both offenses qualify as double punishment for a single crime because liability for each offense was predicated on the same serious injury, citing *State v. Freeland*, 316 N.C. 13, 340 S.E.2d 35 (1986).

In 1979, our Legislature amended our kidnapping statute, dividing kidnapping into two degrees. *Freeland*, 316 N.C. at 23, 340 S.E.2d at 40. Under the statute, a person is guilty of first-degree kidnapping if the person kidnapped "either was not released by the defendant in a safe place or had been seriously

injured or sexually assaulted[.]" N.C. Gen. Stat. § 14-39(b) (2010). In *Freeland*, our Supreme Court held that where a defendant commits a single sexual assault during a kidnapping, our Legislature did not intend for that defendant to be punished "for both the first degree kidnapping and the underlying sexual assault." *Freeland*, 316 N.C. at 23, 340 S.E.2d at 40-41.

We believe *Freeland* is distinguishable from the present case. Here, there was sufficient evidence from which the jury could conclude that Ms. Moore suffered serious injury to support Defendant's first-degree kidnapping conviction which was separate from her serious injuries supporting Defendant's assault conviction. Defendant's assault conviction was based on the injuries Ms. Moore suffered from being pistol-whipped. However, the evidence also showed that Defendant hit Ms. Moore before he pistol-whipped her; that he threw Ms. Moore on the floor; that he dragged Ms. Moore across the house and down stairs; that he applied force to Ms. Moore's back with his knee while pinning her down on the floor; that he manhandled her; that she suffered bruising and a broken toe; and that her body was sore for over two weeks following the incident. Whether the injuries suffered by Ms. Moore, apart from the injuries caused by the pistol-whipping, were "serious" was a question of fact

for the jury. *See, e.g., State v. Everhardt*, 96 N.C. App. 1, 12, 384 S.E.2d 562, 569 (1989), *aff'd*, 326 N.C. 777, 392 S.E.2d 391 (1990). Accordingly, Defendant's argument is overruled. *See State v. Romero*, 164 N.C. App. 169, 175, 595 S.E.2d 208, 212 (2004) (finding no error where the defendant was convicted of both first-degree kidnapping and assault with a deadly weapon inflicting serious injury).

## III. Conclusion

For the reasons stated above, Defendant has failed to demonstrate reversible error.

NO ERROR.

Judge HUNTER, Robert C and Judge DAVIS concur.

Report per Rule 30(e).